**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CEDRICK CLEVELAND; JUAN M.
ACHAN; LUIS F. ALDANA; DENNIS
M. ARCHIE; ANTHONY ARNADO;
DENNIS BARNES; JENNIFER LYNN
BOSCOE; JASON BRAFF; BRIAN T.
BROOKS; JAIME L. BROWN; MICHAEL
E. BROWN; JOSHUA L. BURTON;
CHRISTOPHER LEE CARPENTER;
ARMANDO CARRANZA; HEYWOOD
CHENG; BRAXTON CLARK; PAUL W.
CLARK; RUEL A. COLE; JUAN R.
COLSON; RAYMOND R. CRAWFORD;
JAMES D. CRITES; ARMANDO C.
CUEVAS; DOUGLAS DILKS; JEFF M.
DODD; DAN DRAGOTTO; BRIAN C.
DUDLEY; WILLIAM A. DUNN; STEVE
J. ENCINIAS; ANTHONY CHARLES
FERRO; GUADALUPE G. FLORES;
MARK WRAY FLOT; LARRY R.
FORD; TIMOTHY P. FREEMAN;
RAYMOND A. GALLEGOS; DANNY
WILLIAM GARRETT; JAMES DAVID
GIBSON; MARK GLENCHUR; JAMES
R. GOLDSWORTHY; JEFFREY G.
GONZALEZ; CHRISTIAN P. GRANUCCI;
EDWARD J. GUTIERREZ; BENJAMIN R.
GUZMAN; JOSEL GUZMAN; SIR R.
HABERSHAM, IV; ANTHONY
HARDAWAY; HUSTON HERMAN;
ALFRED B. HERNANDEZ, III; RENE
HERRERA; RICKY M. HERRERA;

No. 03-55505

D.C. No.
CV-99-09175-CBM

OPINION

11097

LARRY HOERNER; KORY WAYNE
JACKSON; LARRY JACKSON; RODERIC
A. JACKSON; RONNIE R. JIMENEZ;
JAYSON A. JOHNSON; KEITH M.
JOHNSON; KEVIN MALCOLM
JOHNSON; DONALD R. JONES;
GARABED KARAOGLANIAN; KENNETH
L. KNIGHTEN; JOSEPH D. LANKAU;
DALE A. LECESNE; ROBERT
LEDESMA; BRIAN M. LEE; ROBERT
W. MACINNES; DAVID MALAFRONTE;
JOE G. MANZO; DEXTER G.
MCDANIEL; MICHELLE MARIE
MCKEE; TIMOTHY K. MCKEE;
LAURINDA MEADE; JOSEPH MENTON;
CHRISTOPHER J. MOFFATT; DONTA T.
MONTGOMERY; CECIL MORRIS;
ROGER D. MORRIS; CARL S.
MOSKOVITZ, II; AARON G.
MUNGARAY; ALAN C. NAEOLE;
DONALD P. NASH, II; JAMES
NORDQUIST; DENNIS A.
OHLIGSHLAGER; DREW OLIPHANT;
TYRONE O'SHEA; PATRICK T.
OYAMA; ROY ALLEN PAIGE; DAVID
PASS; NORMAN M. PATE; STEVEN
KEITH PHILLIPS; BRANDI PILATO;
WILLIAM RAMSEY; STEVEN G.
RAVITZ; LOUIS D. RICHARD; DAVID
T. RILES; JOHN RODRIGUEZ; MARK
L. ROUSSEAU; BRENT RUFF
SHANNON K. SAFFO; PAUL T.
SEMERJIAN; RICHARD DWIGHT

SENNEFF; GEORGE CARR SMITH, III;
STANLEY E. SMITH; PAUL E. SORUM;
BRENT SPANKROY; JOSEPH ST.
GEORGE; THOMAS W. STAFFORD;
CAREY STEINER; DENNIS C. STONE;
MICHAEL J. TAYLOR; MICHAEL D.
TOBEY; ABEL J. TORRES; LOUIS
TORRES; CATHERINE A. UTTERBACK;
JOHN P. VIGIL; VICTOR M. VILLA;
DONELL C. WIBLE; KENNETH
WIGCHERT; ERIK D. WILLIAMS;
MARK R. WOOLF,
              *Plaintiffs-Appellees,*

                    v.

CITY OF LOS ANGELES, a Municipal
corporation,
              *Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Chief Judge, Presiding

Argued and Submitted
December 6, 2004—Pasadena, California

Filed August 22, 2005

Before: James R. Browning, Harry Pregerson, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Barry R. Levy (argued), and Karen M. Bray (briefed), Horvitz & Levy, Encino, California, for the defendant-appellant.

Alan S. Kaufman, Chamberlain, Kaufman & Jones, Albany, New York, for the plaintiffs-appellees.

## OPINION

PREGERSON, Circuit Judge:

This case involves the application of the Fair Labor Standards Act's ("FLSA") overtime exemption for an "employee engaged in fire protection activities." 29 U.S.C. § 207(k). Unless an exemption applies, the FLSA requires that employees be compensated at a rate of one-and-one-half times their regular hourly rate for all hours worked in excess of forty in one week. We must determine whether the fire protection exemption should be applied to dual function paramedics, individuals trained in both fire suppression and advanced life saving. This issue is of first impression in the Ninth Circuit.

We have jurisdiction under 28 U.S.C. § 1291. For the reasons set forth below, we affirm the district court, finding that no exemption applies.

## I.   Factual Background

Plaintiffs are 119 employees of Defendant City of Los Angeles (the "City"). They are employed as "dual function" or "cross-trained" firefighters/paramedics ("dual function paramedics"). This means that Plaintiffs are fully trained and certified in both fire suppression skills *and* advanced life support paramedics. The City also employs "single function" paramedics who are *not* trained in fire suppression.

Plaintiffs work a rotating schedule that results in nine scheduled twenty-four-hour shifts every twenty-seven days, for a total of 216 hours per work period. During periods relevant to this case, Plaintiffs were assigned to work as paramedics on "paramedic ambulances." While staffing paramedic ambulances, Plaintiffs were responsible for providing medical care, transporting patients to hospitals, maintaining the ambulances, and completing related paperwork. Paramedic ambulances are usually staffed by two employees. This may include two single function paramedics, two dual function paramedics, or one of each. Dual function and single function paramedics assigned to paramedic ambulances perform the same job — that is, they provide medical care and transport assistance.

Paramedic ambulances are not designed to provide fire protection services. They do not carry water, hoses, pumps, ladders, or fire suppression breathing equipment, nor do they carry any specialized extrication equipment, aside from a crow bar and a lock cutter. All personnel at a fire scene are expected to wear fire protection gear, except paramedics on paramedic ambulances, who are dispatched only to perform medical services. Paramedic ambulances are not dispatched to every fire call, but are instead dispatched only when there appears to be a need for advanced life support medical services. Further, when they arrive at fire scenes, paramedics treat injured people, standby for patient care, and take exhausted firefighters to the hospital; they do not assist with any fire suppression.

If there is no injury, and the incident commander does not see the need for the paramedic ambulance to stand by, the incident commander has the discretion to release the paramedic ambulance from the scene to be available for other calls.

Paramedic ambulances are rarely dispatched to fire scenes, so such dispatches make up a very small portion of Plaintiffs' work. Plaintiffs testified that they are sent to fire scenes an

average of one to two times per year, and only to perform medical functions. There is no evidence that any Plaintiff (or any other dual function paramedic) has ever been ordered to perform fire suppression by an incident commander when assigned to a paramedic ambulance. Dual function paramedics may volunteer to assist firefighters at a fire scene, but if they do not volunteer, they are not subject to discipline.

Plaintiffs assigned to paramedic ambulances do not perform environmental rescues;[1] such rescues are performed by fire suppression personnel assigned to vehicles with the necessary equipment. Plaintiffs are sometimes dispatched to crime scenes and vehicle accidents for the purpose of providing medical services. Nevertheless, Plaintiffs respond to a considerably greater number of purely medical emergencies than they do to fires, traffic accidents, or crime scenes. Because paramedics are called away from the fire station more frequently than firefighters, dual function paramedics often miss required fire suppression training sessions.

## II.   Statutory and Regulatory Background

The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-19, provides for the payment of premium overtime compensation at one and one-half times the regular rate when an employee works more than forty hours in a seven-day week. *See* 29 U.S.C. § 207(a).[2] Section 207(k) provides an

---

[1]Although the district court did not define "environmental rescues," it appears to refer to the swift water rescues, cliff rescues, and underground tunnel rescues discussed in the parties' testimony.

[2]Section 207(a) states, in pertinent part:

Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions

(1)   Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for

exemption for law enforcement and fire protection employees. *See* 29 U.S.C. § 207(k).[3] Under this exemption, an employer

---

commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

(2)   No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this chapter by the Fair Labor Standards Amendments of 1966 —

29 U.S.C. § 207(a).

[3]Section 207(k) states, in pertinent part:

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities . . . if —

(1)   in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2)   in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k).

must compensate fire protection employees with payment of premium overtime payment only after 204 hours of work within a twenty-seven-day period. *See* § 207(k)(2). The City has relied on § 207(k)'s exemption to pay Plaintiffs as employees in fire protection activities. Classified as such, Plaintiffs received overtime pay only if they worked more than 204 hours in a twenty seven-day work-period.

## A.   *Regulatory Interpretation of the FLSA*

At the time that Plaintiffs filed their complaint, the FLSA did not define an "employee in . . . fire protection activity." Guidance for defining this term came from Department of Labor ("DOL") regulations, available in the Code of Federal Regulations. *See* 29 C.F.R. § 553. Section 553.210 provides a four-part test for determining whether an employee is engaged in a "fire protection activity." 29 C.F.R. § 553.210(a).[4] The last full sentence of this regulation specifically includes ambulance and rescue service workers who form an "integral part" of an agency's fire protection activities. This sentence

---

[4]Section 553.210(a) states in pertinent part:

> As used in [§ 207(k)], the term "any employee . . . in fire protection activities" refers to any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and *responsibility to engage in the prevention, control or extinguishment* of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards. The term would include all such employees, regardless of their status as "trainee," "probationary," or "permanent," or of their particular specialty or job title . . . . *The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See* § 553.215.

29 C.F.R. § 553.210(a) (emphasis added).

is followed by an explicit cross-reference to 29 C.F.R. § 553.215. According to § 553.215, ambulance and rescue service employees "of a public agency *other* than a fire protection or law enforcement agency may be treated as employees engaged in fire protection" if they are "*regularly* dispatched to fires, crime scenes, riots, natural disasters and accidents." 29 C.F.R. § 553.215(a) (emphasis added).[5] Section 553.212 provides that someone who spends more than twenty percent of his or her working time engaged in nonexempt activities (activities not related to fire suppression) may not be considered an "employee engaged in fire protection." 29 C.F.R. § 553.212(a).[6]

---

[5]Section 553.215(a) states in pertinent part:

> Ambulance and rescue service employees of a public agency *other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities of the type contemplated by [§ 207(k)] if their services are substantially related to firefighting* or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective, duties, and (2) the ambulance and rescue service employees are *regularly dispatched to fires, crime scenes, riots, natural disasters and accidents*. As provided in § 553.213(b), where employees perform both fire protection and law enforcement activities, the *applicable standard is the one which applies to the activity in which the employee spends the majority of work time during the work period*.

29 C.F.R. § 553.215(a) (emphasis added).

[6]Section 553.212(a) states in pertinent part:

> Employees engaged in fire protection . . . activities as described in § 553.210 . . . may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection or law enforcement activities . . . . The performance of such nonexempt work will not defeat [the § 207(k)] exemption unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period. *A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part*.

29 C.F.R. § 553.212(a) (emphasis added).

### III.  Procedural Background

#### A.  District Court Proceedings

##### 1.  The Complaint

In their complaint, Plaintiffs alleged that the City violated the FLSA by compensating them as fire protection employees under 29 U.S.C. § 207(k)'s special overtime exemption during the periods that they were assigned to paramedic ambulances. Plaintiffs contend that during those periods, they did not qualify as fire protection employees as that term was defined by DOL regulations set forth in 29 C.F.R. § 553, and that they should have been compensated at a rate of one-and-one-half times their regular hourly rate for all hours in excess of forty hours worked in one week.

Specifically, Plaintiffs asserted that they do not qualify as fire protection employees under the DOL regulations because: (1) they do not have the "responsibility" to engage in fire suppression, § 553.210(a)(3); (2) they do not, in fact, engage in fire suppression and are not regularly dispatched to fire scenes, § 553.210(a); and (3) the exemption is inapplicable because Plaintiffs spent more than twenty percent of their time engaged in nonexempt work (work that is not performed incident to or in conjunction with their fire protection) because they devote the vast majority of their time to providing medical services, § 553.212(a). Plaintiffs also alleged that the City's decision to compensate them as fire protection employees was not the result of a good faith effort to comply with the FLSA.

##### 2.  Enactment of 29 U.S.C. § 203(y)

On December 9, 1999, three months after Plaintiffs filed their complaint, Congress enacted 29 U.S.C. § 203(y).[7] Sec-

---

[7]*See* Fair Labor Standards Act Amendment, Pub. L. 106-151, 113 Stat. 1731 (1999).

tion 203(y) provides the FLSA with its own statutory definition of an "employee in fire protection activities." 29 U.S.C. § 203(y). This definition is much shorter and simpler than the piecemeal definition found in the Code of Federal Regulations. Nonetheless, § 203(y) is reminiscent of 29 C.F.R. § 553.210(a)(3), inasmuch as it defines an employee in fire protection activities as one who "has the legal authority and *responsibility* to engage in fire suppression . . . ." 29 U.S.C. § 203(y)(1) (emphasis added).[8]

### 3.  *District Court Ruling*

The parties stipulated to a bifurcated bench trial. The issue of liability was tried first, with the amount of damages to be determined later. Without affording priority to the definitions of "employee in fire protection activities" as set forth in the DOL regulations and in § 203(y), the district court concluded that Plaintiffs did not qualify as "employee[s] in fire protection activities" under *either* definition because: (1) Plaintiffs do not have the "responsibility to engage in fire prevention, control or extinguishment" as set forth in 29 C.F.R. § 553.210(a)(3); (2) Plaintiffs are not regularly dispatched to fire scenes as described by 29 C.F.R. § 553.215(a)(2); (3) Plaintiffs' nonexempt work is not limited to less than twenty

---

[8]Section 203(y) states, in pertinent part:

"Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who —

(1)  is trained in fire suppression, has the legal authority and *responsibility to engage in fire suppression*, and is employed by a fire department of a municipality, county, fire district, or State; and

(2)  is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y) (emphasis added).

percent of their total work hours as described by 29 C.F.R. § 553.212; and (4) Plaintiffs do not have the "responsibility to engage in fire suppression" as set forth in 29 U.S.C. § 203(y).

Following the liability phase of the trial, the parties stipulated to a method for calculating the unpaid overtime. The district court concluded that Plaintiffs were entitled to liquidated damages, because the City did not act reasonably or in good faith. The district court subsequently entered judgment, awarding unpaid overtime and liquidated damages for a total of $5,131,514.02. The district court also awarded Plaintiffs $116,550.00 in attorneys fees and $11,389.12 in costs.

### B.   The Appeal

The City maintains that all work performed by Plaintiffs, including emergency medical services, is exempt under § 203(y).[9] In addition, the City contends that § 203(y) amended the FLSA to both define and *clarify* the scope of exempt activity under § 207(k)'s fire protection employee exemption. As a clarification, the City asserts that § 203(y) applies both retroactively and prospectively, and that § 203(y) should govern the district court's entire analysis. *See ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000) (recognizing that "clarifying legislation is not subject to any presumption against retroactivity and is applied to all cases pending as of the date of its enactment"). Plaintiffs maintain that the district court correctly applied and interpreted the FLSA, its recent amendment, and relevant DOL regulations.

---

[9]The City's appeal focuses only on the times Plaintiffs were assigned to paramedic ambulances because: (1) Plaintiffs concede that they were properly compensated under the fire protection employee exemption during the periods they staffed firefighting vehicles; and (2) the City concedes that Plaintiffs should not be compensated as fire protection employees during the periods they work as Quality Improvement Analysts.

## IV. Standard of Review

A district court's determinations regarding exemptions to the FLSA are questions of law that we review *de novo*. *See Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002). However, findings of fact underlying a legal determination are reviewed for clear error. *See id.*

The district court's interpretation of DOL regulations promulgated under the FLSA is reviewed *de novo*. *See Webster v. Pub. Sch. Employees of Wash., Inc.* 247 F.3d 910, 914-15 (9th Cir. 2001). Nonetheless, deference is owed to the DOL's regulations interpreting the Act. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 n.4 (9th Cir. 2001).

## V. Discussion

The FLSA is construed liberally in favor of employees; exemptions "are to be narrowly construed against the employers seeking to assert them . . . ." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)*; see also Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (holding that the FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction") (quotation and citation omitted). Further, an FLSA exemption will not be found "except [in contexts] plainly and unmistakably within [the given exemption's] terms and spirit." *Id.* (quoting *Arnold*, 361 U.S. at 392). Therefore, the City has the burden to prove that Plaintiffs meet each element of the § 207(k) exemption for "employee[s] in fire protection activities" and that Plaintiffs fit "plainly and unmistakably" within the terms and spirit of the exemption.

As discussed in greater detail below, the district court properly concluded that the City did not meet its burden of proving that Plaintiffs qualify as "employees engaged in fire protection" as defined by the DOL's regulations *or* § 203(y). Each definition will be examined in turn.

### A. The Definitions of "Employee Engaged in Fire Protection Activities," and Their Applications

#### 1. 29 C.F.R. § 553.210 and 29 U.S.C. § 203(y)

**[1]** Section 553.210(a) defines an "employee . . . in fire protection activities" as any employee who: (1) is employed by an organized fire department or fire protection district; (2) has been trained in fire protection; (3) has the legal authority and *responsibility* to engage in the prevention, control, or extinguishment of a fire; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires.[10] 29 C.F.R. § 553.210(a) (emphasis added). Section 203(y) states that an "employee in fire protection activities" is one who: (1) is trained in fire suppression; (2) has the legal authority and *responsibility* to engage in fire suppression; (3) is employed by a fire department of a municipality, county, fire district, or State; and (4) is either engaged in the prevention, control, and extinguishment of fires or responds to emergency situations where life, property, or the environment is at risk. 29 U.S.C. § 203(y) (emphasis added). The parties agree that this case turns on whether Plaintiffs have the *responsibility* to engage in fire prevention as required by 29 C.F.R. § 553.210(a)(3) and 29 U.S.C. § 203(y)(2).

To determine the meaning of a term in a federal regulation, we look to the common meaning of the word. *See United States v. Willfong*, 274 F.3d 1297, 1301 (9th Cir. 2001) (citing *United States v. Hoff*, 22 F.3d 222, 223 (9th Cir. 1994)). The starting point for an examination of statutory meaning is the

---

[10]Section 553.210(a) alternatively provides that § 207(k) also applies to "rescue and ambulance service personnel if such personnel form an integral party of the public agency's fire protection activities. *See* § 553.215." This alternative exemption cannot apply to the Plaintiffs because they are employed by the Los Angeles City Fire Department, and § 553.215 only applies to "employees of a public agency *other* than a fire protection . . . agency." § 553.215(a).

text of the statute itself. *See United States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004). Where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms," *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (citation and internal quotations omitted), because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). The inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." *Ron Pair Enters.*, 489 U.S. at 240. "When a statute does not define a term, a court should construe that term in accordance with its 'ordinary, contemporary, common meaning.' " *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal citation omitted). "To determine the 'plain meaning' of a term undefined by a statute, resort to a dictionary is permissible." *Id.* at 1034.

**[2]** The ordinary, common meaning of the word "responsibility" is "a duty, obligation or burden." American Heritage Dictionary of the English Language, Fourth Edition (Houghton Mifflin 2000). Other dictionaries are to the same effect:

- "A charge, trust, or duty, for which one is responsible," Oxford English Dictionary (2nd ed. 1989);

- "Liability," Black's Law Dictionary (8th ed. 2004);

- "A thing or person that one is responsible for," Webster's New World Dictionary, Third College Edition (1986).

Similarly, "responsible" means "expected or obliged to account (for something, to someone), answerable, accountable" and "involving accountability, obligation or duties." Webster's New World Dictionary, Third College Edition (1986). "Responsible applies to one who has been delegated some duty or responsibility by one in authority and who is subject to penalty in case of default." *Id*. "The state or fact of

having a duty to deal with something [is] . . . a thing that one is required to do as part of a job, role or legal obligation." New Oxford American Dictionary (2001). "Responsible" means "having an obligation to do something, or having control over or care for someone, as part of one's job or role." *Id.*[11]

**[3]** Applying this ordinary, common-sense meaning, for Plaintiffs to have the "responsibility" to engage in fire suppression, they must have some real obligation or duty to do so. If a fire occurs, it must be their job to deal with it. The undisputed evidence shows that, among other things:

---

[11]The City devotes extensive briefing to the possible legislative intent behind enacting § 203(y). The City contends, that in enacting § 203(y), Congress meant to ensure that the definition applied to dual function paramedics as well as firefighters. The City cites numerous congressional statements to support its contention that § 203(y) was intended to include dual function paramedics. *See* 145 Cong. Rec. E2343, H11499, and H2809.

According to the rules of statutory construction, the court can only look to legislative intent when a statute is ambiguous. *See HUD v. Rucker*, 535 U.S. 125, 132 (2002) ("[R]eference to legislative history is inappropriate when the text of the statute is unambiguous."); *see also W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98-99 (1991)

> (The best evidence of [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President. Where that contains a phrase that is unambiguous — that has a clearly accepted meaning in both legislative and judicial practice — we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process.).

However, because the term "responsibility" is not vague or unclear on these facts, the statute cannot be deemed ambiguous, and review of legislative history would be imprudent. *See Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 964 v. BF Goodrich Aerospace Aerostructures Group*, 387 F.3d 1046, 1051-52 (9th Cir. 2004) ("Only if this organic approach leaves ambiguity — or, indeed, if it reveals it — may we turn to extrinsic indicia of legislative intent, like legislative history.")

(1)   the paramedic ambulances do not carry fire-fighting equipment or breathing apparatuses;

(2)   a dispatcher does not know if he or she is sending single or dual function paramedics to a call;

(3)   paramedic ambulances are not regularly dispatched to fire scenes and are dispatched only when there appears to be a need for advanced life support medical services;

(4)   dual function paramedics are not expected to wear fire protective gear;

(5)   dual function paramedics are dispatched to a variety of incidents (e.g., vehicle accidents and crime scenes) at which they are expected to perform only medical services; and

(6)   there is no evidence that a dual function paramedic has ever been ordered to perform fire suppression.

For these many reasons, the district court properly concluded that the City did not meet its burden of showing that Plaintiffs have the "responsibility" to engage in fire prevention, control, or extinguishment as required by 29 C.F.R. § 553.210(a)(3).

## 2.   *29 C.F.R. § 553.212*

**[4]** Section 553.212 provides that an employee who spends more than twenty percent of his or her working time engaged in nonexempt activities may not be considered an "employee engaged in fire protection." 29 C.F.R. § 553.212(a). According to § 553.212, if ambulance or rescue service workers fall within §§ 553.210 or 553.215, they are still entitled to § 207(a)'s regular overtime compensation so long as they spend more than twenty percent of their working time

involved in nonfire suppression activities. Because Plaintiffs do not fall within the definition of either § 553.210 or § 553.215, we need not decide whether they spend more than twenty percent of their working time in nonexempt activities. *See Vela v. City of Houston*, 276 F.3d 659, 672 (5th Cir. 2001).

### B.    The Temporal Scope of 29 U.S.C. § 203(y)

**[5]** As discussed above, when Plaintiffs filed their complaint, the FLSA did not contain a definition for an "employee in fire protection activities," and Plaintiffs' suit was based on the contention that they did not fit within the DOL's definition in 29 C.F.R. § 553. In December 1999, Congress enacted 29 U.S.C. § 203(y), which provided the FLSA with its own definition. The City contends that the definition of § 203(y) supercedes any DOL language as the exclusive definition. Further, the City contends that this definition should be applied retroactively and prospectively because Congress' enactment of § 203(y) constitutes a "clarification" rather than an amendment. However, because Plaintiffs do not have the "responsibility" to engage in fire suppression and, consequently do not qualify under *either* definition, there is no need to discuss the temporal scope of § 203(y).

## VI.    Conclusion

Because the City has not met its burden of proving that Plaintiffs qualify as "employees engaged in fire protection" as defined by *either* 29 C.F.R. § 553 *or* 29 U.S.C. § 203(y), the district court's finding that § 207(k)'s exemption does not apply is AFFIRMED.