# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NUCLEAR INFORMATION AND
RESOURCE SERVICE; COMMITTEE TO
BRIDGE THE GAP; PUBLIC CITIZEN,
INC.; REDWOOD ALLIANCE; SIERRA
CLUB,
       *Plaintiffs-Appellants,*

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION RESEARCH AND
SPECIAL PROGRAMS ADMINISTRATION;
NORMAN Y. MINETA, in his official
capacity as Secretary of the United
States Department of
Transportation,
       *Defendants-Appellees.*

No. 05-16327

D.C. No.
CV-04-04740-MHP

OPINION

Appeal from the United States District Court
for the Northern District of California
Marilyn H. Patel, District Judge, Presiding

Argued and Submitted
May 16, 2006—San Francisco, California

Filed July 24, 2006

Before: Pamela Ann Rymer and Kim McLane Wardlaw,
Circuit Judges, and James V. Selna,* District Judge.

Opinion by Judge Rymer

*The Honorable James V. Selna, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Paul Lamboley, San Francisco, California, for the appellants.

John L. Smeltzer, United States Department of Justice, Washington, D.C., for the appellee.

## OPINION

RYMER, Circuit Judge:

The Nuclear Information and Resource Service, Committee to Bridge the Gap, Public Citizen, Inc., Redwood Alliance,

and Sierra Club (collectively NIRS) appeal the district court's dismissal of NIRS's challenge to the Department of Transportation's (DOT) rulemaking for lack of subject matter jurisdiction. The district court held that the court of appeals has exclusive jurisdiction under 49 U.S.C. § 20114(c), which provides that any proceeding to review a final action of the Secretary of Transportation under the Hazardous Materials Transportation Act (HMTA), "as applicable to railroad safety," shall be brought in the courts of appeals pursuant to the Hobbs Act, 28 U.S.C. §§ 2341-2351. We agree with the district court that because the challenged DOT rule regulates transportation of hazardous materials by rail, as well as by other modes of transportation, exclusive jurisdiction lies in the courts of appeals. We affirm.

I

DOT is authorized to designate material as hazardous and to prescribe regulations for the safe transportation of such material. 49 U.S.C. § 5103(a), (b)(1). Under this authority, DOT has issued its Hazardous Materials Regulations (HMR), which regulate the shipment of radioactive materials, including packaging, labeling, and notification. 49 C.F.R. §§ 171-180. The requirements in the HMR apply to the "transportation of hazardous material in commerce," 49 C.F.R. § 171.1(c), including "[m]ovement of a hazardous material by rail car, aircraft, motor vehicle, or vessel," 49 C.F.R. § 171.1(c)(1).

After an extensive period of public comment and coordination with the Nuclear Regulatory Commission (NRC), on January 26, 2004, DOT issued a Final Rule adopting Compatibility Amendments to the HMR to harmonize its exemptions for low-level radioactive materials with the exemption standards of the International Atomic Energy Agency (IAEA). Hazardous Materials Regulations; Compatibility With the Regulations of the International Atomic Energy Agency; Final Rule, 69 Fed. Reg. 3,632 (Jan. 26,

2004) (to be codified at 49 C.F.R. pts. 171-78) ("DOT Final Rule"). As a result of the amendments, the HMR now defines "radioactive material" to mean "any material containing radionuclides where both the activity concentration and the total activity in the consignment exceed the values specified" in the new dose-based tables. 49 C.F.R. § 173.403. In preparing its final amendment to the HMR, DOT relied on the Environmental Assessment and Finding of No Significant Impact issued by NRC. DOT Final Rule, 69 Fed. Reg. at 3,664; *see* 40 C.F.R. § 1501.5(a)(2) (permitting a lead agency to supervise preparation of an Environmental Impact Statement if multiple agencies are involved in "a group of actions directly related to each other because of their functional interdependence").

On November 9, 2004, NIRS filed an action in the United States District Court for the Northern District of California seeking review of DOT's rulemaking. NIRS alleged that DOT violated the National Environmental Protection Act (NEPA) by failing to prepare an Environmental Impact Statement (EIS) before promulgating its Final Rule. More than eight months earlier, on March 26, 2004, NIRS had timely filed a petition for review of the NRC rulemaking in this court under the Hobbs Act, arguing that NRC breached its NEPA obligations. On November 10, 2004, NIRS sought transfer of the NRC review proceedings to the district court for consolidation with the DOT case. We denied that motion without prejudice on April 13, 2005. On January 10, 2005, DOT filed a motion to dismiss the district court action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction pursuant to 49 U.S.C. § 20114(c).

The district court granted DOT's motion to dismiss. The court held that it was apparent from the Hobbs Act and § 20114(c) that an action challenging the validity of DOT's regulations, as applicable to railroad safety, must be brought in the courts of appeals. Even though the district court recognized the possibility that it would retain jurisdiction to review

the portions of the rule that were unrelated to rail transport, while the courts of appeals had exclusive jurisdiction over any part applicable to railroad safety, it concluded that considerations of judicial economy favored resolution of all claims arising from a single agency decision in one forum.

NIRS timely appealed. We review de novo the district court's dismissal for lack of subject matter jurisdiction. *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 n.2 (9th Cir. 2004).

II

District courts generally have jurisdiction over NEPA claims pursuant to 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 702. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1179 (9th Cir. 2004) (noting that "judicial enforcement of NEPA rights is available through the APA"). However, where a federal statute provides for direct review of an agency action in the court of appeals, such "[s]pecific grants of exclusive jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts." *Carpenter v. Dept. of Transp.*, 13 F.3d 313, 316 (9th Cir. 1994) (quoting *Owner-Operators Indep. Drivers Ass'n of Am., Inc. v. Skinner*, 931 F.2d 582, 589 (9th Cir. 1991)).

**[1]** The specific grant of jurisdiction relevant to NIRS's claims against DOT is set forth in the Hobbs Act, which provides that courts of appeals shall have exclusive jurisdiction over actions seeking judicial review of "all final agency actions described in section 20114(c) of title 49," a provision of the Federal Railroad Safety Act of 1970 (FRSA). 28 U.S.C. § 2342(7). Section 20114(c), in turn, provides that "a proceeding to review a final action of the Secretary of Transportation under [Title 49, Subtitle V, Part A] or, *as applicable to railroad safety*, chapter 51 or 57 of [Title 49] shall be brought in the appropriate court of appeals as provided in chapter 158 of title 28 [the Hobbs Act]." 49 U.S.C. § 20114(c) (emphasis

added). The DOT regulations at issue in this case were promulgated pursuant to chapter 51 of Title 49, 49 U.S.C. §§ 5101-5128, which codifies the HMTA. DOT's Final Rule applies to all modes of transport, including rail.

NIRS argues that the court of appeals has exclusive jurisdiction to review DOT action under the HMTA only when DOT takes action unique to rail carriers. NIRS grounds this argument in the legislative history of the FRSA, which it claims demonstrates that Congress intended § 20114(c) to apply only to actions by the Federal Railroad Administration (FRA), not by DOT, and only to actions solely applicable to railroad regulation, not to multi-modal regulation. To support its position, NIRS relies on a draft version of § 20114(c) that limited judicial review of HMTA actions in the court of appeals to those "applicable solely to railroads." DOT counters that applying § 20114(c) to multi-modal actions that impact railroad safety is consistent with the plain language of the statute and with the section's purpose and legislative history. DOT argues that § 20114(c) is not ambiguous on its face and that there is no reason to look beyond the provision's plain meaning to its legislative history.

**[2]** We agree with DOT that § 20114(c) is unambiguous; however, we refine DOT's reading of the statute. The statute provides that "a proceeding to review a final action of the Secretary of Transportation under this part or, as applicable to railroad safety, chapter 51 or 57 of this title shall be brought in the appropriate court of appeals." The prepositional phrase "as applicable to railroad safety" modifies the noun "chapter 51." Thus, a challenge to a final action under Chapter 51, as that chapter is applicable to railroad safety, must be brought in the courts of appeals. The alternate reading of the statute urged by DOT interprets the phrase "as applicable to railroad safety" as modifying "a final action." This reading is grammatically unsound because it requires dropping the preposition "as" and moving "under" so that the relevant part of the sentence reads "a final action applicable to railroad safety

under Chapter 51." The latter reading would be defensible if the language were "applicable to railroad safety" and not "*as* applicable to railroad safety." However, as it is written, we think it clear that this jurisdictional provision applies to actions under the HMTA (Chapter 51), as that statute applies to railroad safety.

[3] If the statute were read to provide exclusive appellate jurisdiction for final agency actions applicable to railroad safety under the HMTA, then there might be a question whether an action would be reviewable in the court of appeals only in so far as it applied to railroad safety, and reviewable in the district court in so far as it applied to other modes of transportation. However, the technically sound reading of the statute forecloses the possibility that "a proceeding" to review "a final action" would need to be split into component parts. Any action under the HMTA that affects railroad safety is an action under that statute as *the statute* is applicable to railroad safety, even if the action also deals with other modes of transportation. In contrast, actions under the HMTA that do not deal with railroad safety *at all* are not actions under the statute as applicable to railroad safety, and the jurisdictional provision does not apply. It is undisputed that DOT's IAEA Compatibility Amendments were issued under the authority of the HMTA. And because the new exemption standards apply to shipments by rail, they were an action under HMTA as applicable to railroad safety. Therefore, we hold that the challenged regulations are reviewable only in the courts of appeals and that the district court properly dismissed the action for lack of subject matter jurisdiction.[1]

---

[1]We note that the relevance of our decision going forward is limited by the enactment of the *Safe, Accountable, Flexible and Efficient Transportation Equity Act of 2005: A Legacy for Users*, (SAFETEA-LU), Pub. L. No. 109-59, 119 Stat. 1144 (2005), which amended the HMTA to provide for direct review of final actions of the Secretary in the courts of appeals regardless of the transportation mode affected. 49 U.S.C. § 5127(a).

III

**[4]** Because the statute is unambiguous, we need not examine the statute's legislative history. It is well established that "[t]he plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999); *see also, e.g., SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (holding that plain meaning always controls "unless that meaning would lead to absurd results" (internal quotation marks omitted)). Courts can only look to legislative history to determine congressional intent if a statute is ambiguous. *See, e.g., Cleveland v. City of Los Angeles*, 420 F.3d 981, 990 n.11 (9th Cir. 2005) (citing *HUD v. Rucker*, 535 U.S. 125, 132 (2002)); *see also BedRoc Ltd. v. United States*, 541 U.S. 176, 187 n.8 (2004) (explaining that "longstanding precedents" "permit resort to legislative history only when necessary to interpret ambiguous statutory text").

**[5]** Supreme Court and our precedent also make clear that "[j]udicial review provisions . . . are jurisdictional in nature and must be construed with strict fidelity to their terms." *Stone v. INS*, 514 U.S. 386, 405 (1995); *Owner-Operators Indep. Drivers Ass'n of Am.*, 931 F.2d at 590 (holding that "[c]ourts should strictly construe jurisdictional statutes"). "If there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals, we must resolve that ambiguity in favor of review by a court of appeals." *Suburban O'Hare Commission v. Dole*, 787 F.2d 186, 192 (7th Cir. 1986); *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 193 (2d Cir. 2004) (citing cases from the Second, Seventh, Tenth, and D.C. Circuits for the proposition that "when there *is* a specific statutory grant of jurisdiction to the court of appeals, it should be construed in favor of review by the court of appeals").

However, even if the legislative history were relevant, it would not change the result we reach. NIRS relies on the legislative history of § 20114(c) to argue that "applicable to railroad safety" should be read as "solely applicable to railroad safety," which excludes multi-modal rulemaking from the statute's purview.[2] NIRS notes that when Congress enacted the Rail Safety Enforcement and Review Act (RSERA) in 1992, it included a judicial review provision calling for review under the Hobbs Act of "final agency action taken by the Secretary under this subchapter or under any of the other Federal railroad safety laws, as defined in section 441(e) of this title." 45 U.S.C. § 431(f) (1993). NIRS points out that "railroad safety laws" had been interpreted to include all actions under the HMTA, so that § 431(f) (the precursor to § 20114(c)), could have been read to provide Hobbs Act review of any actions under the HMTA, even those unrelated to railroad safety. *See* Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423, § 10, 94 Stat. 1811, 1816 (1980), (adding 45 U.S.C. § 441 (1982) (repealed 1984)). In 1994, Congress amended § 20114(c) to its current form by adding the qualifier "as applicable to railroad safety." Both parties agree that when Congress enacted § 20114(c) to re-codify the former section 431(f), Congress did not intend to make a substantive change in the law. *See* H.R. Rep. No. 103-180 (1993), *reprinted in* 1994 U.S.C.C.A.N. 818. And the parties agree that despite the "non-substantive" nature of the re-codification, Congress did make a significant change to the text when it added "as applicable to railroad safety."

In light of the nature of the 1994 revision, NIRS argues that we should look to the initial draft of the legislation to determine Congressional intent. Specifically, NIRS relies on the

---

[2]The interpretation of the statute NIRS urges does not make sense grammatically because it requires reading the "as" out of "as applicable to railroad safety" and then reading the clause "applicable to railroad safety" as modifying "a final action." As we have explained, this reading of the statute is untenable.

1991 draft, which provided for direct appellate review of actions under railroad-specific safety statutes, or "to the extent applicable solely to railroads, [of] a rule, regulation, or order of the Secretary of Transportation under any other Act." H.R. 2607 IH, 102nd Cong. § 5 (1991). NIRS argues that Congress's intent should be determined from the original draft because the adopted revision was suggested in order to further "the Committee's apparent objective." H.R. Rep. No. 102-205, at 26 (1991), *reprinted in* 1992 U.S.C.C.A.N. 866, 887. However, Congress did not enact this version of the statute. Instead, Congress adopted an amendment proposed by the Secretary to simplify the statute and enacted a version that omitted the "applicable solely to railroads" language.

The Supreme Court has recognized that in "rare cases the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters, and those intentions must be controlling." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). The court explained that in the "exceptional case," there was "some scope for adopting a restricted rather than a literal or usual meaning of [the statute's] words where acceptance of that meaning . . . would thwart the obvious purpose of the statute." *Id.* (internal citations and quotation marks omitted). This is not the exceptional case. A plain language interpretation of the statute does not prevent judicial review of DOT actions relating to railroad safety. The apparent purpose of the statute was to require direct review of railroad safety laws in the courts of appeals, and the language of the 1992 Act accomplished this purpose, albeit allowing for direct review of multi-modal actions as well. The 1994 provision is similarly consistent with the legislative purpose.

Further, the legislative history could be interpreted to support exactly the opposite of the position NIRS urges. As DOT argues, when Congress does not adopt limiting language contained in a draft bill, such an action is ordinarily deemed evidence of Congressional intent to reject the limitation. *See Doe*

*v. Chao*, 540 U.S. 614, 623 (2004). In this case, Congress rejected an explicit limitation that would have provided direct review for actions solely applicable to railroad safety in favor of language that provided for review of federal railroad safety laws, defined as including all laws enacted pursuant to the HMTA. Moreover, nothing in the Congressional report accompanying the final version of the statute indicates that Congress intended the provision to apply only to actions of the FRA or to actions relating solely to railroads. *See* H.R. Rep. No. 102-205, at 17 (1991), *reprinted in* 1992 U.S.C.C.A.N. 866, 878 ("The Committee intends that this action conform the judicial review procedures for the rail mode to those in both the highway and aviation modes, . . . [and] believes that this system of immediate review in the courts of appeals, with discretionary review in the Supreme Court, will expedite the legal review of the Secretary's rail safety actions and will bring legal finality to cases more promptly."). With respect to the 1994 re-codification, instead of retaining language that could be read to apply to all HMTA actions, even those unrelated to railroad safety, Congress limited the judicial-review provision to actions under, "as applicable to railroad safety," the HMTA. In so doing, Congress did not use the language from the rejected 1991 draft legislation that would have applied the provision only to actions "solely applicable to railroads." NIRS's position entails a significant stretch which we are unwilling to take, for it would require us to conclude that Congress intended to include limiting language that it expressly rejected when it enacted the statute. *Cf. Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

**[6]** Given the unambiguous plain language of the regulation and the less than clear legislative history, we decline to read into § 20114(c) a limitation that Congress rejected when it enacted and re-codified the statute.

IV

**[7]** NIRS additionally maintains that the district court should have relied on *Ruud v. United States Department of Labor*, 347 F.3d 1086 (9th Cir. 2003), and a pragmatic application of jurisdictional principles, to take concurrent jurisdiction and to transfer this case to the court of appeals to be decided with NIRS's petition for review of the NRC rulemaking. We need not decide this, however, because 28 U.S.C. § 1631 only permits district courts to transfer actions to the courts of appeals to "cure [a] want of jurisdiction" if the court of appeals would have been able to assert jurisdiction at the time the action was filed.[3] The Hobbs Act requires that a challenge to an agency action be filed within sixty days. 28 U.S.C. § 2344. NIRS filed its district court action more than 60 days after DOT denied NIRS's administrative appeal. Accordingly, transfer to the court of appeals would not have been permitted under § 1631.

**[8]** The district court therefore properly dismissed NIRS's action for lack of subject matter jurisdiction.

AFFIRMED.

---

[3]28 U.S.C. § 1631 provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.