[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 24, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11280

_____

D. C. Docket No. 06-61341-CV-DMM

ARNIE GONZALEZ,

Plaintiff-Appellant,

versus

CITY OF DEERFIELD BEACH, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 24, 2008)**

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

MARCUS, Circuit Judge:

The plaintiffs, twelve current and former employees of the City of Deerfield Beach, Florida,[1] appeal from the district court's grant of summary judgment in favor of the City in this action for unpaid overtime compensation pursuant to the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. §§ 201 et seq. On appeal, the plaintiffs argue that the district court erred by: (1) concluding that they had the "responsibility to engage in fire suppression" within the meaning the FLSA, and thus that they were not entitled to overtime pay under the Act's ordinary overtime requirements; and (2) denying them leave to amend their complaint. After thorough review of the record and careful consideration of the parties' briefs and oral argument, we affirm.

We review a district court's grant of summary judgment de novo. See, e.g., Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1329 (11th Cir. 2008). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, the court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the

[1] The suit was brought under the FLSA's collective action provision, 29 U.S.C. § 216(b) (providing that an action for overtime pay "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated").

2

non-movant." <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004). Ordinarily, we review a district court's denial of leave to amend a complaint for abuse of discretion. However, where the denial is based on a legal determination that amendment would be futile, we review the district court's decision <u>de novo</u>. <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1310 (11th Cir. 2007).

The relevant facts are straightforward. The plaintiffs are twelve current and former employees of the City of Deerfield Beach, Florida. Each works for the City's Fire and Rescue Department as either a Firefighter/Emergency Medical Technician ("EMT") or a Rescue Supervisor. Although each has the training necessary to engage in fire suppression, they rarely, if ever, are called upon to do so. In fact, Gonzalez is the only class member ever to have engaged in fire suppression, and he has done so only on a handful of occasions. Instead, the plaintiffs' duties consist of providing emergency medical assistance. They respond to car accidents, heart attacks, and other situations requiring medical care. As a general rule, the plaintiffs do not respond to fire calls, and when they do, they tend to the victims of the fire instead of fighting the fire itself. Moreover, although the plaintiffs are assigned the protective "turn-out" gear worn by firefighters, they do not wear it when responding to fire calls. They wear the gear only when called to accident scenes involving a hazard of broken glass.

In sum, the plaintiffs concede the "theoretical possibility" that a commanding officer could direct them to engage in fire suppression; and they admit that they would be subject to significant disciplinary action if they refused to obey. Nevertheless, they contend that as a practical matter, they are not responsible for suppressing fires.

The plaintiffs claim that the City has failed to properly compensate them for their overtime work. The Fair Labor Standards Act generally requires employers to pay employees one-and-a-half times their normal rate when they work more than forty hours per week. 29 U.S.C. § 207(a); Falken v. Glynn County, Ga., 197 F.3d 1341, 1345 (11th Cir. 1999). However, the City maintains that it is not subject to these requirements because the plaintiffs fall under an exemption in § 207(k) of the Act for individuals employed by a "public agency engaged in fire protection or law enforcement activities." 29 U.S.C. § 207(k).[2] The dispute in this case turns on whether the plaintiffs can be considered employees "engaged in fire protection activity."

The relevant definition is provided in § 203(y) of the Act, which provides:

"Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who --

---

[2] The overtime compensation requirements for employees engaged in fire suppression activities are provided in 29 C.F.R § 553.230.

4

(1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and

(2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y).

To fall within the definition provided in § 203(y), therefore, an employee must: (1) be trained in fire suppression; (2) have the legal authority to engage in fire suppression; (3) have the responsibility to engage in fire suppression; (4) be employed by a fire department of a municipality, county, fire district, or state; and (5) be engaged either (i) in the prevention, control, and extinguishment of fires, or (ii) in the response to emergency situations where life, property, or the environment is at risk. Huff v. DeKalb County, Ga., 516 F.3d 1273, 1279 (11th Cir. 2008). The plaintiffs concede that they meet all of § 203(y)'s criteria except the third. Because their work is effectively limited to providing emergency medical assistance, they maintain that they do not have the "responsibility to engage in fire suppression."

As fate would have it, shortly after the plaintiffs filed their initial brief on appeal, we handed down our decision in Huff. That decision leaves the plaintiffs

5

with precious little to argue. Huff was a class action brought by employees of the Fire & Rescue Service of Dekalb County, Georgia ("DCFRS"). While some of the employees had (albeit rarely) engaged in fire suppression, others had not. Just like in this case, that dispute turned solely on whether the plaintiffs had the "responsibility to engage in fire suppression" under § 203(y). We concluded that the plaintiffs were responsible, regardless of whether they had ever actually engaged in fire suppression.

Our interpretation was based on § 203(y)'s text. We noted, for example, that by the plain terms of § 203(y)'s final clause, the provision applies not only to an employee who "is engaged in the prevention, control, and extinguishment of fires," but also to one who is engaged in "response to emergency situations where life, property, or the environment is at risk." 29 U.S.C. § 203(y); Huff, 515 F.3d at 1281. We further held that the ordinary meaning of the term "responsibility" "does not imply any actual engagement in fire suppression," and that "employees may have a 'responsibility to engage in fire suppression' without ever actually engaging in fire suppression themselves." Huff, 515 F.3d at 1281. "This 'responsibility,'" we further explained, "is a forward-looking, affirmative duty or obligation that an employee may have at some point in the future." Id. We therefore concluded that the plaintiffs had the responsibility to engage in fire suppression, irrespective of

6

whether their jobs involved the actual exercise of that responsibility. Singling out

the relevant features of the plaintiffs' employment, we summarized our conclusion

this way:

> It is undisputed that all Plaintiffs have advanced firefighting training.
> It is also undisputed that the DCFRS has equipped them with
> "turn-out" gear, sends them regularly to fire scenes, and requires them
> to be available to assist with fire suppression if they are needed . . . .
> Further, the DCFRS Fire Captains testified that if the Plaintiffs were
> ordered to engage in fire suppression, they must do so, or be subject to
> discipline. While the incident commanders evidently do not, as a
> matter of policy, order [firemen/paramedics] to engage in fire
> suppression, this does not mean that the [firemen/paramedics] do not
> have a "responsibility" to engage in fire suppression if ordered.
> Finally, fire suppression is in each Plaintiff's job description. All
> Plaintiffs therefore have the "responsibility" to engage in fire
> suppression within the meaning of § 203(y). While the actual exercise
> of this responsibility may be contingent on the particular demands of a
> fire scene, it does not make the responsibility less real.

Id. at 1281-82.

The present case is on all fours with Huff. As in Huff, the plaintiffs here

have been trained in fire suppression, have been issued "turn-out" gear, and can be

required on pain of disciplinary action to engage in fire suppression. Given our

holding in Huff, the fact that they never actually engage in fire suppression is

simply irrelevant.

The plaintiffs nevertheless struggle to distinguish their case from Huff.

They note that, unlike in Huff, they are not "regularly" called to fire scenes. But

7

nothing in Huff turned on how frequently an employee might be called to a fire scene. Nor do we attach any significance to the plaintiffs' observation that, unlike the plaintiffs in Huff, they have not received "advanced" firefighting training. Section 203(y) requires only that an employee be "trained in fire suppression," and as we have noted, the appellants concede that they possess the necessary training.

The plaintiffs further point out that, unlike the employees in Huff, the employees here typically do not wear their protective turn-out gear when responding to calls. Since they cannot fight fires without the gear, they argue they could never actually be called upon to fight fires. They also point out that whereas the employees in Huff were assigned their duties upon arriving at a scene, the employees here are given their assignments by the dispatcher once a call for emergency medical assistance is received. The argument, apparently, is that in Huff, there was always a possibility that after surveying a scene, a supervisor might order a medic or an EMT to help fight a fire if necessary. In contrast, because the plaintiffs here are given their orders prior to arriving at a scene, they are aware beforehand that they will not be fighting fires; as a result, they do not come prepared with the necessary equipment, and thus cannot be called upon to help suppress a fire as readily as the Huff plaintiffs.

Again, we do not regard any of these facts as significant. At most, they

8

show merely that under their present operating procedures, it is <u>unlikely</u> that the plaintiffs would be called upon to help suppress a fire. But these arrangements might always be changed to make their participation in fire suppression more likely. Ultimately, it remains undisputed that the plaintiffs could be required to help suppress a fire, and that they would be subject to discipline for refusing to do so. As we noted in <u>Huff</u>, "responsibility" "is a forward-looking, affirmative duty or obligation that an employee may have at some point in the future." <u>Id.</u> at 1281. We therefore hold that the plaintiffs here have the "responsibility to engage in fire suppression" within the meaning of § 203(y).

The plaintiffs also cite two cases from other circuits in support of their interpretation of what it means to have the "responsibility to engage in fire suppression" under § 203(y). Putting aside the dispositive observation that neither decision is binding here, whereas <u>Huff</u> undeniably is, we pause briefly to note that neither decision is contrary to <u>Huff</u>.

The plaintiffs rely most heavily on the Ninth Circuit's decision in <u>Cleveland v. City of Los Angeles</u>, 420 F.3d 981 (9th Cir. 2005). Like the plaintiffs here, the <u>Cleveland</u> plaintiffs had been fully trained in both firefighting and life support, but had never engaged in actual fire suppression. The Ninth Circuit held that the plaintiffs were not covered by § 203(y) because they were not "responsible" for

9

fire suppression under the "ordinary, common-sense meaning" of the word. Id. at 990. It is true that there are many similarities between the Cleveland plaintiffs' jobs and the jobs of the plaintiffs here; but the most important factor present in Huff -- and present here -- was absent in Cleveland: there, unlike here, the plaintiffs could not be ordered to engage in fire suppression; they could volunteer to assist firefighters at a fire scene, but they were not required to do so and were not subject to discipline for failing to do so. Cleveland, 420 F.3d at 984; see also Huff, 516 F.3d at 1279-80.

The plaintiffs also cite Lawrence v. City of Philadelphia, Pa., 527 F.3d 299 (3d Cir. 2008), which the Third Circuit decided shortly after we decided Huff. Lawrence held that Fire Service Paramedics ("FSPs") employed by the City of Philadelphia were not responsible for engaging in fire suppression, even though "the incident commander theoretically has authority to tell an FSP to do anything at the scene of a fire." Id. at 318. The court explained:

> [t]o conclude that an FSP has responsibility for fire suppression activities principally because the incident commander theoretically has authority to tell an FSP to do anything at the scene of a fire would require speculation regarding an FSP's responsibility to engage in fire suppression, which is not permitted on summary judgment. Theoretical possibilities are not evidence.

Id. at 317-18.

But, as Lawrence itself noted, that case is "fundamentally different" from

10

this one. Id. at 315. For one thing, not all of the plaintiffs in Lawrence were certified firefighters. As noted above, § 203(y) requires not only that the employee have the "responsibility to engage in fire suppression," but also that he or she possess the requisite training. If the plaintiffs in Lawrence lacked the proper training, that fact alone would place them outside § 203(y)'s ambit, regardless of whether they were deemed responsible for fire suppression. Second, despite the assertion that the FSPs might "theoretically" be called to help suppress a fire, there was no evidence indicating that they could be penalized for refusing. Id. at 315, 317.

In any event, Huff controls here, and under Huff, the plaintiffs have the "responsibility to engage in fire suppression" for purposes of § 203(y). We therefore hold that the plaintiffs fall within § 207(k)'s exemption from the FLSA's general overtime requirements.

The plaintiffs argue, nevertheless, that even if they meet § 203(y)'s definition, the § 207(k) exemption still does not apply to them by virtue of the so-called "80/20 Rule" found in Department of Labor Regulation § 553.212. 29 C.F.R. § 553.212(a). Regulation 553.212 provides that "[a] person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement

11

activities" under § 207(k). Id. The plaintiffs assert that § 553.212 applies here because they devote more than twenty percent of their work to nonexempt tasks.

But this argument, too, was foreclosed by Huff, for there we specifically held that the congressional enactment of § 203(y) in 1999 rendered § 553.212 and the 80/20 Rule in § 553.212 obsolete. Huff, 516 F.3d at 1278. We, therefore, hold that the plaintiffs are exempt from the FLSA overtime requirements in § 207(a), and that the district court correctly granted summary judgment to the City.

In light of the foregoing discussion, the plaintiffs' final argument on appeal -- that the district court erred in denying them leave to amend their complaint -- also clearly fails. The plaintiffs claim that they wanted to amend the complaint after learning during discovery that, unlike the other class members, the named plaintiff, Gonzalez, had engaged in fire suppression in at least a few instances. They sought to create a separate class consisting only of those plaintiffs who had never engaged in fire suppression. As Huff indicates, and our discussion above reaffirms, it is irrelevant for purposes of § 203(y) whether an employee has ever engaged in actual fire suppression. Amending the complaint, therefore, would indeed have been futile, and the district court did not err in denying the plaintiffs leave to do so.

**AFFIRMED.**

12