**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RONALD K. HOOKS, Regional Director of the Nineteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, *Petitioner-Appellant*, | No. 13-35912<br><br>D.C. No.<br>3:13-cv-05470-BHS |
| v. | OPINION |
| KITSAP TENANT SUPPORT SERVICES, INC., *Respondent-Appellee*. | |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted
July 7, 2015—Seattle, Washington

Filed March 7, 2016

Before: Jacqueline H. Nguyen and Michelle T. Friedland,
Circuit Judges and Cormac J. Carney,* District Judge.

Opinion by Judge Friedland

---

**SUMMARY**[**]

---

**Appointments**

The panel affirmed the district court's dismissal of a
petition, filed pursuant to section 10(j) of the National Labor
Relations Act, providing interim injunctive relief while the
National Labor Relations Board processed an unfair labor
practice complaint against Kitsap Tenant Support Services,
Inc., because Lafe E. Solomon could not authorize the 10(j)
petition as Acting General Counsel of the Board because he
had not been properly appointed under the Federal
Vacancies Reform Act ("FVRA").

The FVRA authorizes the President to temporarily fill
vacancies in offices in the Executive Branch that ordinarily
require Senate confirmation. The FVRA also provides
conditions for when an appointee may simultaneously serve
as an acting officer and be the President's nominee for
Senate confirmation as to the permanent position.

---

* The Honorable Cormac J. Carney, District Judge for the U.S. District
Court for the Central District of California, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

As a preliminary matter, the panel held that neither the FVRA nor the National Labor Relations Act was the exclusive means of appointing an Acting General Counsel of the Board, and thus the President was permitted to elect between the two statutory alternatives to designate an Acting General Counsel.  The panel rejected Kitsap Tenant Support Services, Inc.'s argument that because Solomon's appointment did not comply with section 3(d) of the National Labor Relations Act, the appointment was invalid.

The panel held that because Solomon served as Acting General Counsel while also being the nominee to the permanent position, he held his post in violation of the FVRA.  The panel agreed with the D.C. Circuit's holding in *SW General, Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015), as to 5 U.S.C. § 3345(b)(1)'s reach, and likewise concluded that Solomon lacked the authority to serve after he was nominated.

To be valid, a 10(j) petition must be authorized by the Board either through a quorum of three Board members directly authorizing the petition, or by the Board's General Counsel authorizing the petition pursuant to a previous delegation of the Board's 10(j) authority to the General Counsel.  The Board conceded that the first avenue was not satisfied.  The panel held that the second avenue was not satisfied either because Solomon was not properly serving as Acting General Counsel under the FVRA at the time that the 10(j) petition was filed.

The panel held that the Board explicitly waived any arguments based on the FVRA's exemption clause, and it did not otherwise contest the remedy sought by Kitsap Tenant Support Services, Inc., and therefore the district court properly dismissed the 10(j) petition.

**COUNSEL**

Richard F. Griffin, Jr., Elinor L. Merberg, Jennifer Abruzzo, Laura T. Vazquez, Barry J. Kearney, Ruth E. Burdick (argued), and Jayme L. Sophir, National Labor Relations Board, Washington, D.C., for Petitioner-Appellant.

Gary Lofland (argued), Kellen Holgate, and Rachel Saimons, Halverson Northwest Law Group P.C., Yakima, Washington, for Respondent-Appellee.

**OPINION**

FRIEDLAND, Circuit Judge:

The Appointments Clause of the Constitution authorizes the President to appoint officers of the United States "by and with the Advice and Consent of the Senate." U.S. Const. art. II, § 2, cl. 2. This appeal requires us to consider the President's ability to temporarily fill vacancies in offices of the Executive branch that ordinarily require Senate confirmation. In particular, the parties contest the proper interpretation of the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 *et seq.*, as it relates to the appointment of the former Acting General Counsel of the National Labor Relations Board ("NLRB" or "Board").

The FVRA authorizes the President to temporarily appoint acting officers to fill certain vacancies without first obtaining Senate confirmation. Specifically, it sets forth the eligibility requirements for the President's appointees to certain acting roles and how long such appointees may serve. It also provides conditions for when an appointee may simultaneously serve as an acting officer and be the

President's nominee for Senate confirmation to the permanent position.

Respondent Kitsap Tenant Support Services ("KTSS") here challenges the authority of Lafe E. Solomon, the former Acting General Counsel of the NLRB, to authorize a petition for injunctive relief against KTSS after the President nominated him to the permanent position. We conclude that because Solomon served in that acting capacity while also being the nominee to the permanent position, he held his post in violation of the FVRA. Accordingly, we affirm the district court's dismissal of the Board's petition.

# I

The Board consists of five members appointed by the President, by and with the advice and consent of the Senate. 29 U.S.C. § 153(a). The National Labor Relations Act ("NLRA") also provides that the Board shall have a General Counsel. *Id.* § 153(d). This President-appointed, Senate-confirmed officer is tasked with the Board's prosecutorial functions. *Id.* These functions include authorizing the investigation of unfair labor practice charges and issuing complaints on behalf of the Board as a result of such investigations. *Id.*

On June 20, 2010, former NLRB General Counsel Ronald Meisburg resigned, and President Obama designated Solomon as Acting General Counsel pursuant to § 3345(a) of the FVRA. President Obama subsequently nominated Solomon to the position of General Counsel on January 5, 2011, 157 Cong. Rec. S69 (daily ed. Jan. 5, 2011), but the Senate returned the nomination, 159 Cong. Rec. S17 (daily ed. Jan. 3, 2013). The President later resubmitted Solomon's nomination, 159 Cong. Rec. S3884 (daily ed. May 23, 2013), but then withdrew it, 159 Cong. Rec. S6263 (daily ed. Aug.

1, 2013), and nominated Richard Griffin, who was confirmed on October 29, 2013, 159 Cong. Rec. S7635 (daily ed. Oct. 29, 2013). Solomon served in the role of Acting General Counsel from June 21, 2010 until November 4, 2013, when Griffin took office. *See* Press Release, National Labor Relations Board, *Richard F. Griffin, Jr. Sworn In as NLRB General Counsel* (Nov. 4, 2013), *available at* https://www.nlrb.gov/news-outreach/news-story/richard-f-griffin-jr-sworn-nlrb-general-counsel.

Under Solomon's direction, the NLRB investigated various charges filed by a labor union that KTSS had engaged in unfair labor practices.[1] Based on that investigation, Solomon issued a series of administrative complaints against KTSS, which led to a hearing against KTSS before an administrative law judge. While the administrative proceedings were pending, Ronald K. Hooks, a Regional Director of the Board, filed a petition for injunctive relief, thereby initiating the present case. The petition was filed on June 13, 2013, in the United States District Court for the Western District of Washington, pursuant to section 10(j), 29 U.S.C. § 160(j), of the NLRA. Section 10(j) provides: "The Board [has] power, upon

---

[1] A union, employer, or employee may file charges alleging unfair labor practices with an NLRB regional office. *NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 118 (1987). Once a charge is received, the case is assigned for investigation. 29 C.F.R. § 101.4. "After investigation, the case may be disposed of through informal methods such as withdrawal, dismissal, or settlement." *Id.* If the charge "appears to have merit" and no settlement is reached, the Regional Director "institutes formal action by issuance of a complaint and notice of hearing," to take place before an administrative law judge. 29 C.F.R. §§ 101.8, 101.10. The power to decide whether or not to issue a complaint is one delegated by the General Counsel to the Board's Regional Directors. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 139 (1975).

issuance of a complaint . . . to petition any United States district court . . . for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). The purpose of a 10(j) injunction is to afford interim relief and to "protect the integrity of the collective bargaining process" while the Board processes an unfair labor practice complaint. *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) (quoting *McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 957 (9th Cir. 2010)).

KTSS moved to dismiss, arguing among other things that Solomon could not authorize the petition as Acting General Counsel because he had not been properly appointed under the FVRA. The district court agreed with KTSS and dismissed the action.

We review de novo a district court's dismissal of an action under either Rule 12(b)(1) or Rule 12(b)(6),**[2]** *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009), and we may affirm on any ground supported by the record, *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Bd. of Trs. of Constr. Laborers' Pension Tr. for S. Cal. v. M.M. Sundt Constr. Co.*, 37 F.3d

---

**[2]** KTSS's motion to dismiss was brought pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, Rule 12(b)(6) for failure to state a claim. The district court granted the motion without clarifying which Rule applied. We need not resolve which rule applies either. Whether we view the 10(j) petition's valid authorization as a jurisdictional requirement or as an element of an injunctive relief claim that must be fulfilled for success on the merits, resolution of this appeal depends on whether Solomon served in violation of the FVRA. We hold that he did, that this means he could not validly authorize the petition, and that the petition was therefore properly dismissed. Because we always have jurisdiction to consider our own jurisdiction, we can reach this issue whether it is jurisdictional or not. *United States v. El Dorado Cty.*, 704 F.3d 1261, 1262 (9th Cir. 2013).

1419, 1420 (9th Cir. 1994) (per curiam). We also review de novo questions of statutory interpretation. *Waste Action Project v. Dawn Mining Corp.*, 137 F.3d 1426, 1428 (9th Cir. 1998). We now affirm the dismissal of the 10(j) petition.

## II

To be valid, a 10(j) petition must be authorized by the Board through one of two avenues. The first is for a quorum of three Board members to directly authorize the specific 10(j) petition. The second is for the General Counsel to authorize the petition pursuant to a previous delegation of the Board's 10(j) authority to the General Counsel. *See* 29 U.S.C. §§ 153(d), 160(j). Under this second avenue, the Board must have had a proper quorum when it delegated authority to the General Counsel, *Frankl v. HTH Corp.*, 650 F.3d 1334, 1354 (9th Cir. 2011), and the General Counsel must be validly serving. KTSS argues that neither avenue was satisfied here.

The Board concedes that the first avenue was not satisfied.[3] We hold that the second avenue was not satisfied

---

[3] The Board initially claimed that it "separately and independently authorized" the 10(j) petition in this case. The Board later conceded, however, that under *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014), it was not properly constituted when it purportedly authorized the petition. In *Noel Canning*, the Supreme Court interpreted the Recess Appointments Clause, which "empowers the President to fill any existing vacancy during any recess—intra-session or inter-session—of sufficient length." 134 S. Ct. at 2577. In addressing what constitutes "sufficient length," the Court held that a recess of three days is too short to trigger the Clause. *Id.* at 2566–67. Because two of the three Board members serving when the present petition was purportedly authorized were held in *Noel Canning* to have invalid appointments, the three-member quorum needed to validly authorize the petition was absent. *See*

either because Solomon was not properly serving as Acting General Counsel under the FVRA at the time that the petition was filed.  In light of this holding, we need not reach KTSS's alternative argument that the Board never validly delegated its 10(j) authority to Solomon.[4]

## A

As a preliminary matter, KTSS asserts that the NLRA provides the exclusive means for the President to appoint an Acting General Counsel.  It is undisputed that Solomon's appointment did not satisfy the NLRA's conditions, and KTSS argues that this is sufficient to show that his appointment was invalid, without any need to consider the FVRA.  This argument is belied by the text of the respective statutes.

The NLRA specifically provides for the temporary designation of an Acting General Counsel in the event of a vacancy.  Section 3(d) of the NLRA states that the President may temporarily fill a vacancy in the office of the General Counsel and limits the term of acting service to forty days,

---

*id.* at 2557; Board Members Since 1935, National Labor Relations Board, https://www.nlrb.gov/who-we-are/board/board-members-1935.

[4] KTSS also contends that Ronald K. Hooks was not validly appointed as a Regional Director of the Board, and that he consequently lacked the authority to issue the underlying administrative complaint pursuant to which the 10(j) petition was filed.  *See* 29 U.S.C. § 160(j).  Because the only decision we are reviewing is the district court's decision to dismiss the 10(j) petition, and because we affirm its dismissal on the ground that the petition itself lacked valid authorization, we need not reach KTSS's argument about the validity of the underlying administrative complaint.

with the possibility of a nomination-based extension.[5] 29 U.S.C. § 153(d).  The FVRA, in turn, states:

> (a) Sections 3345 and 3346 [of the FVRA] are *the exclusive means* for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate, *unless*—
>
>> (1) a statutory provision expressly—
>>
>>> (A) authorizes the President . . . to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity[.]

5 U.S.C. § 3347(a) (emphasis added).

---

[5] Section 3(d) reads in relevant part:

> In case of a vacancy in the office of the General Counsel[,] the President is authorized to designate the officer or employee who shall act as General Counsel during such vacancy, but no person or persons so designated shall so act (1) for more than forty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted.

29 U.S.C. § 153(d).

Under this provision of the FVRA, §§ 3345 and 3346 form the exclusive means for filling a vacancy in an Executive agency office unless another statute expressly provides a means for filling such a vacancy.**[6]** Because section 3(d) of the NLRA does so, neither the FVRA nor the NLRA is the *exclusive* means of appointing an Acting General Counsel of the NLRB.  Thus, the President is permitted to elect between these two statutory alternatives to designate an Acting General Counsel.

The Senate Report on the FVRA confirms this interpretation.  The Senate Report explains that the FVRA retains the vacancy-filling mechanisms in forty different statutes, including NLRA section 3(d), and states that "even with respect to the specific positions in which temporary officers may serve under the specific statutes this bill retains, the [FVRA] would continue to provide an *alternative procedure* for temporarily occupying the office."  S. Rep. 105-250, 1998 WL 404532, at *17 (1998) (emphasis added).

We therefore reject KTSS's argument that because Solomon's appointment did not comply with section 3(d) of the NLRA, the appointment was necessarily invalid.

**B**

We turn now to whether Solomon validly held the Acting General Counsel position under the FVRA at the time the 10(j) petition against KTSS was authorized.  The plain language of the FVRA leads us to conclude that he did not.

---

**[6]** Certain positions may not be filled through the FVRA, but those exceptions are not applicable here.  *See* 5 U.S.C. § 3349c.

Section 3345(a) of the FVRA delineates three discrete categories of individuals who may fill a vacant Executive agency office for which a permanent appointment would require Senate confirmation:

> (a) If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—
>
> > (1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346;
> >
> > (2) notwithstanding paragraph (1), the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346; or
> >
> > (3) notwithstanding paragraph (1), the President (and only the President) may direct an officer or employee of such Executive agency to perform the

functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346, if—

(A) during the 365-day period preceding the date of death, resignation, or beginning of inability to serve of the applicable officer, the officer or employee served in a position in such agency for not less than 90 days; and

(B) the rate of pay for the position described under subparagraph (A) is equal to or greater than the minimum rate of pay payable for a position at GS-15 of the General Schedule.

5 U.S.C. § 3345(a).

Only the first category of acting officer fills the role automatically. As described in (a)(1), "the first assistant to the office" automatically fills the vacancy as an acting officer unless someone else is appointed. *See id.* § 3345(a)(1) ("[T]he first assistant to the office of such [absent] officer *shall perform* the functions and duties of the office." (emphasis added)).

Signaled by the phrase "notwithstanding paragraph (1)," the statute goes on to provide two ways the President may override the automatic operation of (a)(1). First, (a)(2) permits the President to designate an acting officer from the second category of eligible candidates—prior Senate-confirmed officers. Alternatively, under (a)(3), the President

may designate a within-agency officer or employee, provided that the individual served in the Executive agency for not less than ninety days in the year preceding the date of the vacancy in a position with a rate of pay equal to or greater than the minimum GS-15 rate.

Were we to stop here, there would be no concern about Solomon's appointment. As a ten-year veteran who served as the Board's Director of the Office of Representation Appeals at a pay level above GS-15, Solomon seems to satisfy the criteria under (a)(3).[7] But there is another part of § 3345 we must consider—specifically, § 3345(b)(1). It reads:

> (b)(1) Notwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section, if—
>
>> (A) during the 365-day period preceding the date of the [vacancy], such person—
>>
>>> (i) did not serve in the position of first assistant to the office of such officer; or
>>>
>>> (ii) served in the position of first assistant to the office of such officer for less than 90 days; and

---

[7] For the first time on appeal, KTSS objects that the Board has not presented any evidence to support Solomon's career history and rate of pay. We deem this objection waived because KTSS failed to raise it in the district court. *See Hormel v. Helvering*, 312 U.S. 552, 556 (1941).

(B) the President submits a nomination of
such person to the Senate for appointment
to such office.

5 U.S.C. § 3345(b)(1).   Subsection (b)(1) thus precludes
someone from continuing to serve as an acting officer after
being nominated to the permanent position, unless he or she
had been the first assistant for ninety days of the prior year.
The question is to whom this restriction applies.

The Board argues that (b)(1) is a narrow limitation that
only applies to acting officers designated under (a)(1).   If
(b)(1) only applies to (a)(1), as the Board argues, this
provision had no effect on Solomon, who was an (a)(3)-
designated acting officer.   KTSS, on the other hand, argues
that (b)(1) applies broadly to the whole of § 3345(a).   Under
KTSS's interpretation, Solomon, who was an (a)(3) acting
officer and who did not meet (b)(1)'s criteria, could not serve
as Acting General Counsel once President Obama submitted
his nomination to the Senate on January 5, 2011.**[8]**

**1**

The starting point—and, in this case, the ending point—
in discerning Congress's intent in § 3345(b)(1) is the
statutory text.   *BedRoc Ltd., LLC v. United States*, 541 U.S.

---

**[8]** This interpretation differs from that which KTSS advocated in the
district court.   There, KTSS argued that (b)(1) required *all* eligible
candidates to have previously served as a first assistant for at least ninety
days in the year preceding the vacancy—an argument KTSS has since
abandoned.   Even though not raised below, we may consider KTSS's
"new legal arguments . . . [because they] relat[e] to claims previously
raised in the litigation," namely, the proper interpretation of (b)(1).
*Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013).

176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

The D.C. Circuit in *SW General, Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015), recently addressed the identical issue of whether Solomon validly served as the NLRB's Acting General Counsel once he had been nominated.  In *SW General*, after thoroughly analyzing the statutory text and legislative history, the D.C. Circuit held that § 3345(b)(1) applies not only to (a)(1), but also to (a)(2) and (a)(3).  *Id.* at 72–78.  Thus, because Solomon, who was designated Acting General Counsel pursuant to (a)(3), "was never a first assistant and the President nominated him to be General Counsel on January 5, 2011," the D.C. Circuit concluded that "the FVRA prohibited him from serving as Acting General Counsel from [the] date [of his nomination] forward." *Id.* at 78.  We agree with the D.C. Circuit as to § 3345(b)(1)'s reach and thus likewise conclude that Solomon lacked the authority to serve after he was nominated.[9]

Subsection      (b)(1)      begins      by      specifying, "[n]otwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section" if certain criteria are met.  5 U.S.C. § 3345(b)(1).  As the D.C. Circuit recognized, Congress's use of "a person" suggests that the phrase broadly "covers the full spectrum of possible candidates for acting officer," which includes all persons

---

[9] We additionally note that Solomon's nomination was not pending at the time that, according to the Board, he authorized the 10(j) petition—because the purported authorization occurred after the Senate had returned Solomon's nomination but before the President resubmitted it. The Board does not argue that this matters to the analysis, and we assume, as did the D.C. Circuit, that it does not.  *See SW General*, 796 F.3d at 72 n.3.

contemplated by (a)(1), (a)(2), and (a)(3).  *SW Gen.*, 796 F.3d at 74; *see also Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978) ("the phrase 'any person'" has a "naturally broad and inclusive meaning"); *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1246 (9th Cir. 2012) (stating that "a" has a "generalizing force" and indicating that "a" is synonymous with "any" (citing *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002))).  If Congress meant for (b)(1) to apply only to (a)(1), which refers only to first assistants, it likely would have said "first assistant" instead of "a person."

In addition, in the context of the surrounding sections, Congress's use of the phrase "this section" indicates that Congress intended to refer to § 3345 in its entirety.  *See Gale*, 701 F.3d at 1244 ("the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (quoting *Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005))).  As the D.C. Circuit correctly recognized, "[t]hroughout the FVRA, the Congress was precise in its use of internal cross-references," using the term "subsection" or "paragraph" when it meant to refer to something less than a whole section.  *SW Gen.*, 796 F.3d at 74 (citing, *inter alia*, 5 U.S.C. §§ 3345(b)(2)(A) ("subsection (a)"); 3345(c)(1) ("subsection (a)(1)"); 3345(a)(2)–(3) ("paragraph (1)")).  Thus, if Congress had intended (b)(1) to apply only to (a)(1), it likely would have said "that subsection" instead of "this section," consistent with the rest of the statute.  *Id.*  The plain language of (b)(1) thus indicates its applicability to all three subsections of § 3345(a), not merely (a)(1).

The Board disputes this interpretation, arguing that because (b)(1) begins with the language "[n]otwithstanding subsection (a)(1)," (b)(1)'s application must be limited to

(a)(1).  This argument is in tension, however, with the ordinary meaning of the word "notwithstanding."  *See Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) ("unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979))).  The word "notwithstanding" means "in spite of." Oxford   English   Dictionary, http://www.oed.com/ view/Entry/128667?redirectedFrom=notwithstanding#eid; *see also* Merriam-Webster, http://www.merriam-webster.com/dictionary/notwithstanding (defining "notwith standing" as "despite" or "without being prevented by"). Consistent with this definition, as well as Supreme Court guidance, we have explained that "as a general proposition . . . statutory 'notwithstanding' clauses" work to "sweep aside potentially conflicting laws." *United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007) (en banc) (citing *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)).

Applying this definition here, "[n]otwithstanding subsection (a)(1)" simply means that (b)(1)'s limitations control, even to the extent that (a)(1)'s automatic directive that first assistants "shall" serve in an acting capacity may conflict with those limitations.  Nothing about this textual construction indicates that (b)(1) applies *only* to (a)(1); it merely "sweep[s] aside [the] potentially conflicting" provisions of (a)(1). *Novack*, 476 F.3d at 1046; *see also SW Gen.*, 796 F.3d at 75 ("Congress likely referenced subsection (a)(1) to clarify that its command—that the first assistant 'shall' take over as acting officer—does not supersede the prohibition in subsection (b)(1).  But, apart from setting out

an order of operations, the 'notwithstanding' clause has no significance for the ultimate scope of subsection (b)(1).").**[10]**

Furthermore, adopting the Board's interpretation of the FVRA would result in surplusage. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005) ("We try to avoid, where possible, an interpretation of a statute 'that renders any part of it superfluous and does not give effect to all of the words used by Congress.'" (quoting *Nevada v. Watkins*, 939 F.2d 710, 715 (9th Cir. 1991))). If (b)(1) applies only to (a)(1), which refers only to first assistants, then (b)(1)'s reference to persons who "did not serve in the position of first assistant to the office of such officer," 5 U.S.C. § 3345(b)(1)(A)(i), would be, as the D.C. Circuit recognized, "inoperative because the current first assistant *necessarily* served as the first assistant in the previous year." *SW Gen.*, 796 F.3d at 76. If, however, (b)(1) applies to all acting officers—including those designated under (a)(2) and (a)(3)—"then subsection (b)(1)(A)(i) is not superfluous because many [such] officers . . . will not have served as the first assistant in the prior year." *Id.*

The Board argues that our reading of (b)(1) would itself render superfluous the phrase "[n]otwithstanding subsection

---

**[10]** As the D.C. Circuit also pointed out in *SW General*, Congress used the phrase "[f]or purposes of" in § 3345(c)(2), which indicates that "it knew how to use limiting language when it wanted to." 796 F.3d at 75. If (b)(1) were meant to relate only to (a)(1), Congress likely would have said "for purposes of subsection (a)(1)," instead of "notwithstanding."

(a)(1)." If (b)(1) limits all of (a), in the Board's view there is no reason for Congress to have singled out (a)(1) in particular in the "notwithstanding" clause. This argument misses the point of that clause and the effect of (a)(1). Subsection (a)(1)—and only (a)(1)—provides for a default rule, by which the first assistant automatically becomes the acting officer. The "notwithstanding" language, as used in (a)(2), (a)(3), and (b)(1), simply provides that, although that default rule exists, these other provisions still apply. Without the "notwithstanding" clause, confusion could easily arise as to whether (b)(1) has any force in light of the fact that a default rule exists. We thus disagree with the Board's contention that our reading deprives the "notwithstanding" clause of independent meaning.

We also disagree with the Board's further argument that it is "structurally implausible" that (b)(1) applies to (a)(3). Specifically, the Board argues that because (b)(1)'s criteria for serving as an acting officer are linked to service as a first assistant, it does not make sense for an otherwise qualified senior agency official designated under (a)(3)—a subsection that has nothing to do with first assistants—to also have to satisfy the requirements of (b)(1). This argument overlooks the fact that (b)(1) does not set out general criteria for designation as an acting officer; instead, (b)(1) comes into play only when "the President submits a nomination of such person to the Senate for appointment to such office." 5 U.S.C. § 3345(b)(1)(B). An official needs to meet the requirements of both subsections (a) and (b)(1)(A) in order to continue to serve in an acting capacity only if the official is also nominated for the permanent position. There is thus no "implausibility," structural or otherwise, in our reading of the statute.

The Board seems to contend in its reply brief that, even if this construction of the statute is logically plausible, Congress could not have meant for persons otherwise qualified to serve as acting officers under (a)(2) and (a)(3) to also have to meet the requirements of (b)(1) if they are nominated to the permanent office.  The Board contends that (b)(1) simply provides a minimum career-service requirement—ninety days—for a first assistant to serve in both an acting capacity and as the nominee.  Without such a requirement, the first assistant position could be "manipulat[ed]" to include "persons highly unlikely to be career officials."  Because (a)(3), according to the Board, already includes a ninety-day service requirement, it would be "illogical[] [for] service *as a first assistant* [to be] a minimum requirement for serving as an acting officer-nominee," even if the president were relying on (a)(2) or (a)(3) to designate an acting officer.

The Board, however, provides no reasons why such a scheme would be "illogical."  Indeed, it is not difficult to see why congressional concerns about "manipulation" could not have extended to prior Senate-confirmed officers and senior agency employees.  A designation of a prior Senate-confirmed officer to the acting position could just as easily be used for "manipulation" as a first assistant of insufficient tenure.  Such an officer may be equally ill-equipped to run a particular agency insofar as the officer, although previously Senate-confirmed, may have been confirmed to a dissimilar position in a different field.

In this regard, we find it informative that § 3345(b)(2)[11] exempts from (b)(1)'s limitations only a person who was

---

[11] 5 U.S.C. § 3345(b)(2) reads:

confirmed by the Senate to be first assistant for the agency in question.  The inclusion of (b)(2) suggests that Congress was focused not on prior Senate confirmation as a guarantee of qualification to be simultaneously an acting officer and nominee but rather on whether the person is *serving as a first assistant* and that *that office itself* requires Senate confirmation.  Subsection (b)(2) ensures that the acting officer also nominated to the permanent position has already been vetted by the Senate specifically for appointment to that agency and for a role similar to the position to which he or she has most recently been nominated.  The text suggests that Congress was careful to carve out an exception to (b)(1) not for any previously Senate-confirmed acting officer, but only for an individual confirmed to be first assistant to the permanent position in question.

As to senior agency employees, although the pay scale and tenure requirements of (a)(3) may ensure designees of adequate experience within the agency, Congress still could have chosen to exclude such persons from simultaneously serving as acting officers and nominees.  Congress may have decided that only first assistants—rather than just any GS-15

---

(2) Paragraph [(b)](1) shall not apply to any person if—

> (A) such person is serving as the first assistant to the office of an officer described under subsection (a);

> (B) the office of such first assistant is an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate; and

> (C) the Senate has approved the appointment of such person to such office.

employee—hold the requisite seniority and experience to appropriately serve in both capacities (or, perhaps more saliently, to continue serving in an acting capacity even if the nomination does not succeed, *see* 5 U.S.C. § 3346).**[12]**

In any event, instead of speculating as to Congress's intent or second-guessing the wisdom of the statute's plain language, we give effect to the unambiguous words Congress actually used. *See Gov't of Guam ex rel. Guam Econ. Dev. Auth. v. United States*, 179 F.3d 630, 635 (9th Cir. 1999) ("[W]e are bound by the words that Congress actually used."). As the Supreme Court has long held, "[i]t is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written." *United States v. Great N. Ry. Co.*, 343 U.S. 562, 575 (1952).

---

**[12]** Section 3346(a) provides, in relevant part, that "the person serving as an acting officer as described under section 3345" may serve for no longer than 210 days beginning on the date of the vacancy, or, "once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a). Section 3346(b)(1) provides that the acting officer may continue to serve in that position for another 210 days if "the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate." If a second nomination is submitted, § 3346(b)(2) provides that the person may again continue serving in an acting capacity until "the second nomination is confirmed" or "for no more than 210 days after the second nomination is rejected, withdrawn, or returned." Thus, § 3346 has the effect of extending an acting officer's tenure even after that individual's nomination is unsuccessful—which is what happened in Solomon's case. It would be plausible for Congress, through § 3345(b)(1), to have intended to limit the pool of individuals who may serve for an extended period of time despite their failed nomination.

In sum, the text of the FVRA clearly and unambiguously operates to make (b)(1) applicable to all subsections of § 3345(a), not merely to (a)(1).

**2**

When the statutory language is unambiguous and the statutory scheme is coherent and consistent, our inquiry comes to an end, without any inquiry into legislative history. *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012). Even if we could consider the legislative history of the FVRA, however, the legislative history is inconclusive as to Congress's intent.

The Board attempts to support its proposed interpretation with a floor statement by the FVRA's chief sponsor, Senator Thompson, providing: "Under § 3345(b)(1), the revised reference to § 3345(a)(1) means that this subsection applies only when the acting officer is the first assistant, and not when the acting officer is designated by the President pursuant to §§ 3345(a)(2) or 3345(a)(3)." 144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998). Although this statement does support the Board's interpretation rather than the one we glean from the text, it is not the only statement on the subject. Comments by co-sponsor Senator Byrd are in direct tension with those of Senator Thompson. Senator Byrd "hewed much more closely to the statutory text and suggested that subsection (b)(1) applies to all categories of acting officers." *SW Gen.*, 796 F.3d at 77. In particular, after listing the three categories of potential acting officers under subsection (a), Senator Byrd stated:

> *However*, a person may not serve as an acting officer if: (1)(a) he is not the first assistant, or (b) he has been the first assistant for less than 90 of the past 365 days, and has not been

> confirmed for the position; and (2) the President nominates him to fill the vacant office.

144 Cong. Rec. S12824 (daily ed. Oct. 21, 1998) (emphasis added). Senator Byrd's use of the word "however" suggests that the (b)(1) provisions restrict *all* of the three categories in subsection (a) that he had just described. That is, instead of simply restating "notwithstanding subsection (a)(1)" or agreeing with Senator Thompson's remarks about the scope of (b)(1), Senator Byrd's wording implied that (b)(1) restricts all of subsection (a) and not merely (a)(1). The floor statements by the FVRA's sponsors are thus in tension with each other and could not help interpret (b)(1) even if the text were ambiguous.

The Board also makes various arguments based on portions of a Senate Report on an earlier version of the bill. *See* S. Rep. No. 105-250, 1998 WL 404532 (July 15, 1998). We agree with the D.C. Circuit that these portions of the Senate Report are "inapposite because [they] discuss[] a *different version* of the FVRA from the one ultimately enacted." *SW Gen.*, 796 F.3d at 77. The earlier version of § 3345(b) provided:

> (b) Notwithstanding section 3346(a)(2) [which governs the length of time an acting officer may serve upon nomination], a person may not serve as an acting officer for an office under this section, if—
>
> > (1) on the date of the death, resignation, or beginning of inability to serve[] of the applicable officer, such person serves *in*

>*the position of first assistant to such officer*;
>
>(2) during the 365-day period preceding such date, such person served *in the position of first assistant* to such officer for less than 180 days; and
>
>(3) the President submits a nomination of such person to the Senate for appointment to such office.

S. Rep. No. 105-250, 1998 WL 404532, at \*25 (emphases added).  As the D.C. Circuit correctly observed, the earlier draft of subsection (b) "manifestly applie[d] to first assistants only.  But the version ultimately enacted looks quite different."  *SW Gen.*, 796 F.3d at 77.  "[W]hen Congress does not adopt limiting language contained in a draft bill, such an action is ordinarily deemed evidence of Congressional intent to reject the limitation."  *Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp. Res. & Special Programs Admin.*, 457 F.3d 956, 962 (9th Cir. 2006).  Thus, we agree with the D.C. Circuit's determination that "the change in phraseology weighs somewhat *against* the Board's interpretation."  *SW Gen.*, 796 F.3d at 77.

Next, the Board argues that the purposes of the FVRA would be frustrated by our interpretation of (b)(1).  The Board points again to floor statements by Senator Thompson, who said that the (a)(3) category for acting officers was added to address concerns that there may be a shortage of first assistants or Senate-confirmed officers to fill all acting positions, particularly in the early days of a presidential administration.    144 Cong. Rec. S12822.  According to the Board, reading (b)(1) to apply to acting officers other than first assistants would undermine (a)(3)'s

goal of expanding the pool of potential acting officers.  Our reading of (b)(1), however, does not directly limit the pool of potential acting officers.  Subsection (b)(1) affects instead the pool of potential acting officers who may *also be nominated* for permanent posts—a separate circumstance that Senator Thompson's statements do not expressly address.

In a similar vein, the Board contended at oral argument that our reading of (b)(1) cannot be correct because it would "greatly . . . limit the president's options" in designating and nominating acting officers.  But there is no indication that Congress intended to make it easier for the President to simultaneously designate as acting officers and also nominate more persons of his or her choosing.  If anything, the legislative history of the FVRA suggests the opposite motivation.  The Senate Report states that legislation was required to "uphold the Senate's prerogative to advise and consent to nominations through placing a limit on presidential power to appoint temporary officials."  S. Rep. 105-250, at 1998 WL 404532, *4.  When vacancies arise, "[t]he president's duty is to submit nominees for offices to the Senate, not to fill those offices himself."  *Id.* at *5.  The Senate Report noted that previous legislation "unfortunately has not succeeded in encouraging presidents to submit nominees in a timely fashion . . . .  Indeed, given the number of acting officials and the growing number of departments that claim not to be covered by the [prior Vacancies Act], the Senate's confirmation power is being undermined as never before."  *Id.*  The Senate Report suggests that the FVRA was motivated by a desire to reassert the Senate's confirmation power in the face of what was seen as executive overreach.  *See SW Gen.*, 796 F.3d at 70 ("The statute was framed as a reclamation of the Congress's Appointments Clause power.").  Our reading of (b)(1), which limits the President's

choice of who can concurrently serve in an acting capacity and be nominated to the permanent position, seems consistent with such a purpose.

Finally, the Board contends that its interpretation of the statute is supported by guidance documents and letters from the Government Accountability Office and the Office of Legal Counsel. Neither Office is charged with administering the FVRA, however, and we give no deference to interpretations of statutes by agencies not charged with administering them. *See Ass'n of Civilian Techs., Silver Barons Chapter v. Fed. Labor Relations Auth.*, 200 F.3d 590, 592 (9th Cir. 2000); *Parola v. Weinberger*, 848 F.2d 956, 959–60 (9th Cir. 1988). In any event, for the reasons discussed, we believe the GAO's and OLC's interpretation, which accords with the Board's, conflicts with the plain text of the statute.

## III.

The parties do not dispute that our interpretation of the FVRA requires that the Board's 10(j) petition be dismissed for lack of proper authorization. This is not to suggest, however, that every violation of the FVRA will result in the invalidation of the challenged agency action. Although the FVRA generally renders void actions taken in violation of its provisions, *see* 5 U.S.C. § 3348(d)(1)–(2), it also exempts from that automatic result actions by a select pool of officers, including the General Counsel of the NLRB, *see* 5 U.S.C. § 3348(e). The exemption provision thus "renders the actions of [such] improperly serving [officers, including the Acting General Counsel,] *voidable*, not void." *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015). In addition to this provision, defenses based on harmless error or the de facto officer doctrine might potentially be raised to overcome the consequences of particular FVRA

violations.**[13]**  *See id.* at 79–82; *Hooks v. Remington Lodging & Hosp., LLC*, 8 F. Supp. 3d 1178, 1189–92 (D. Alaska 2014).  Here, however, the Board has explicitly waived any arguments based on the FVRA's exemption clause, 5 U.S.C. § 3348(e), and it does not otherwise contest the remedy sought by KTSS.**[14]**

The district court's dismissal of the 10(j) petition is therefore **AFFIRMED.**

---

**[13]** The de facto officer doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient."  *Nguyen v. United States*, 539 U.S. 69, 77 (2003) (quoting *Ryder v. United States*, 515 U.S. 177, 180 (1995)).

**[14]** The Board suggests for the first time in a letter filed after oral argument pursuant to Federal Rule of Appellate Procedure 28(j) that the de facto officer defense is available here.  Even if we could consider such a defense despite the Board's explicit waiver of the § 3348(e) issue, that defense would have been waived for the separate reason that it was available at the time the Board filed its opening brief and yet was not raised.  *See United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011) (rejecting a harmless error argument raised for the first time in a 28(j) letter where that argument was available at the time the party filed its initial brief); *United States v. LaPierre*, 998 F.2d 1460, 1466 n.5 (9th Cir. 1993) (28(j) letter "*cannot* raise a new issue" that was not addressed in the briefs).