NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JILL M. STEIGLEMAN,

Plaintiff-Appellant,

v.

SYMETRA LIFE INSURANCE
COMPANY, an Iowa corporation,

Defendant-Appellee.

No. 21-15613

D.C. No. 3:19-cv-08060-ROS

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted March 11, 2022
Phoenix, Arizona

Before: HAWKINS, PAEZ, and WATFORD, Circuit Judges.

Jill Steigleman appeals from the district court's order granting summary

judgment to Symetra Life Insurance Company on her claim for bad faith under

Arizona law. We reverse and remand.

**1.** The district court erred in holding that Steigleman's long-term disability

policy was part of an "employee welfare benefit plan" under the Employee

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Retirement Income Security Act (ERISA). *See* 29 U.S.C. § 1002(1). Steigleman's employees gained access to group-type disability insurance coverage through Steigleman's membership in The Agents Association (TAA), and Steigleman's insurance agency paid the employees' premiums. While these factors are evidence that Steigleman may have "established or maintained" an ERISA plan, they are not sufficient. This court has noted that the "bare purchase of insurance . . . does not by itself constitute an ERISA plan." *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988). And while an employer can establish an ERISA plan even if she "does no more than arrange for a group-type insurance program," *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1389 (9th Cir. 1995) (internal quotation marks omitted), the record does not show that Steigleman's agency specifically contracted with TAA to extend disability coverage to her employees or otherwise "arranged for" that coverage. Unlike the employer in *Crull*, Steigleman neither agreed to act as the plan administrator nor undertook the administrative tasks associated with the maintenance of an ERISA plan. *Id.* at 1390.

Symetra contends that Steigleman imposed stricter eligibility criteria for her employees than TAA did, but the record does not support summary judgment on this issue. Steigleman testified at her deposition that her employees were eligible for disability coverage if they had been employed for six months and worked at least 32 hours per week. TAA required that staff be employed for six months and

work only 20 hours per week. Despite this apparent discrepancy, there is a genuine issue of material fact as to whether Steigleman imposed her own separate requirements or merely described TAA's eligibility rules incorrectly at her deposition.[1]

**2.** Symetra argues alternatively that TAA qualifies as an "employee organization" capable of establishing or maintaining an ERISA plan. An employee organization must exist "for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships." 29 U.S.C. § 1002(4). TAA's bylaws state that one of its purposes is to advise Farm Bureau Financial Services (FBFS), but only "when requested" by FBFS management. TAA does not engage with FBFS on typical issues incidental to employment relationships, such as salary negotiation, labor conditions, or collective bargaining. *See Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996). The only concrete advocacy issue identified by Symetra is a Matching Savings Program, yet TAA's executive director did not know what the program was, and an FBFS officer testified that the program was "kind of off limits usually" in TAA's discussions with FBFS. We cannot conclude from this record that TAA has any meaningful engagement with FBFS regarding an

---

[1] Because we need not address whether Steigleman and her staff were covered by different plans, Steigleman's request for judicial notice (Dkt. 11) is DENIED as moot.

employee benefit plan or other matters incidental to employment relationships. Symetra's alternative argument for finding that an ERISA plan was established therefore fails.[2]

**3.** The district court erred in concluding that Symetra's conduct was reasonable as a matter of law. Although Symetra ultimately paid Steigleman's claim in full, it may nonetheless be liable for bad faith if it failed to "immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000) (en banc).

Symetra's initial denial on October 26, 2017, was consistent with Dr. Ehteshami's note indicating that Steigleman could return to work on August 30, 2017. However, Symetra was aware that this note reflected only Dr. Ehteshami's June 14 post-operative examination, and Steigleman had informed Symetra of an October 11 examination at which Dr. Ehteshami recommended that she not return to work before January 2018. Symetra also informed Steigleman in February 2018

---

[2] At oral argument and in a subsequent Rule 28(j) letter, Symetra suggested that TAA also qualifies under ERISA's definition of "employer" because TAA was acting "indirectly in the interest of an employer," *i.e.*, Steigleman, when it purportedly established or maintained an ERISA plan. 29 U.S.C. § 1002(5). Symetra did not raise this argument in its Answering Brief or in its summary judgment briefing before the district court. We therefore will not address Symetra's new theory, *see Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 564 n.14 (9th Cir. 2016), and the district court may decide whether it would be appropriate to consider the argument on remand.

that it was limiting her claim to 12 months of benefits even though Symetra's own records from October 2017 reflect a radiculopathy diagnosis that made this limitation inapplicable. Even after Symetra determined that the limitation did not apply in August 2018, it waited four months before informing Steigleman. When Symetra finally notified Steigleman that it was withdrawing the limitation, it suspended further benefits based on information Symetra received from its broker that Steigleman had returned to work. Internal emails show that Symetra was aware Steigleman would likely be entitled to benefits even if she did return to work in some capacity, but it suspended her benefits anyway.

Symetra argues that it had reasonable grounds for each of these actions. But it is not enough to show that there are innocent explanations for the insurer's decisions. Symetra must establish that no reasonable jury could find that it acted unreasonably and was aware that its conduct was unreasonable. *Zilisch*, 995 P.2d at 280. Symetra has not met its burden here.

**4.** Steigleman has made out a prima facie case for punitive damages. The record contains extensive evidence of improper financial motivations in Symetra's investigation of Steigleman's claim. Symetra was also aware of Steigleman's precarious financial situation when it took many of the allegedly unreasonable actions. A reasonable jury could therefore conclude that Symetra's conduct was so "oppressive, outrageous or intolerable" that punitive damages are warranted in this

case. *See Hawkins v. Allstate Ins. Co.*, 733 P.2d 1073, 1080 (Ariz. 1987).

**REVERSED and REMANDED.**