[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12979

_____

JOHN P. MIDDLETON,

Plaintiff-Appellant,

*versus*

THE HOLLYWOOD REPORTER LLC,
a foreign limited liability company,
GARY BAUM,
an individual,
ROY LEE,
an individual,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-21951-JEM

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and MARCUS, Circuit Judges.

JORDAN, Circuit Judge:

This defamation action stems from a soured professional and personal relationship between John P. Middleton and Roy Lee. That relationship began and ended in California, and much of the subsequent fallout between the two men also took place there.

Mr. Middleton sued Mr. Lee in California superior court, seeking to recover millions of dollars. As that protracted legal battle was ongoing, Mr. Middleton relocated to Florida.

In June of 2020, The Hollywood Reporter, LLC, published an article penned by Gary Baum titled "Allegations of Prostitution, Substance Abuse and Spying: Inside Hollywood's Nastiest Producer Feud." That article detailed the relationship between Mr. Middleton and Mr. Lee, their fallout, and the subsequent legal battle. It also contained allegedly false and negative statements about Mr. Middleton.

In response to the article, Mr. Middleton filed a separate defamation action in June of 2022 in the Southern District of Florida

against Mr. Lee, The Hollywood Reporter, and Mr. Baum, whom we refer to collectively as the defendants. The district court dismissed the action, concluding that Florida's borrowing statute and choice-of-law rules required the application of California's one-year statute of limitations to Mr. Middleton's defamation claims. As a result, the defamation claims were time-barred. The court also concluded that Mr. Middleton's proposed amended complaint did not alter its determination, so it denied leave to amend on futility grounds. Mr. Middleton appeals, arguing that California's one-year statute of limitations does not apply.

After reviewing the parties' briefs and the record, and with the benefit of oral argument, we affirm. Considering the allegations in Mr. Middleton's proposed amended complaint, California's statute of limitations applied.

**I**

When a district court has dismissed an initial complaint under Rule 12(b)(6), and denied leave to file an amended complaint on futility grounds, we can consider the proposed amended complaint in reviewing the order of dismissal. *See EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1021–22 (11th Cir. 2016). We follow that course here and set out the allegations contained in Mr. Middleton's proposed amended complaint.

**A**

Between 2010 and 2016, Mr. Middleton and Mr. Lee maintained a professional and personal relationship. Their professional relationship included a written agreement to produce motion

pictures, while their personal friendship involved Mr. Middleton helping Mr. Lee with various personal matters. Mr. Lee allegedly breached various promises made to Mr. Middleton and engaged in fraudulent acts against him. Mr. Middleton subsequently sued Mr. Lee in California superior court seeking millions of dollars in damages.

In response to Mr. Middleton's lawsuit, Mr. Lee turned to The Hollywood Reporter and Mr. Baum, one of its senior writers, and provided information about Mr. Middleton for publication in *The Hollywood Reporter*. Those statements included allegedly false claims that Mr. Middleton: (1) sent text messages seeking services from sex workers; (2) unlawfully concealed or attempted to conceal donations to a political action committee and funded efforts to suppress minority votes; (3) became heavily inebriated at the Cannes Film Festival; and (4) exhibited severe behaviors due to his obsessive-compulsive disorder.[1]

The Hollywood Reporter published an article authored by Mr. Baum titled "Allegations of Prostitution, Substance Abuse and Spying: Inside Hollywood's Nastiest Producer Feud." The article appeared first in print on June 24, 2020, then online on June 25, 2020. The article was distributed and accessible in print and online throughout Florida.

---

[1] In his proposed amended complaint, Mr. Middleton based his defamation claim only on the statements that he sent text messages seeking services from sex workers and that he unlawfully concealed or attempted to conceal political donations.

At the time of the article's publication, Mr. Middleton had moved from California and was a resident and domiciliary of Florida. Mr. Middleton had also relocated his main production company from California to Nevada.

Though the article purported to describe the feud between Mr. Middleton and Mr. Lee, it portrayed Mr. Middleton negatively and Mr. Lee favorably. The article specifically reported on the two statements Mr. Middleton disputes—his alleged communications with sex workers and his alleged unlawful concealment of political donations. Mr. Middleton alleged that Mr. Baum and The Hollywood Reporter knew or should have known prior to and at the time of publication that those statements were false.

Days after the article's publication, Mr. Middleton's representative contacted Mr. Baum and The Hollywood Reporter's editorial director to seek corrections. The representative provided explanations as to why each of the two statements were inaccurate or fabricated. The Hollywood Reporter agreed to revise the online version of the article to more accurately reflect Mr. Middleton's statements regarding his political donations, but it refused to revise the statements on Mr. Middleton's communications for services from sex workers.

Mr. Middleton's legal representative contacted The Hollywood Reporter's general counsel and editorial director to again dispute the article's statements regarding Mr. Middleton's purported contact with sex workers. The Hollywood Reporter again refused to delete or retract those statements from the published article.

**B**

On June 24, 2022, Mr. Middleton brought the underlying diversity action in the Southern District of Florida against the defendants. The complaint asserted claims for defamation, trade libel, and intentional infliction of emotional distress against The Hollywood Reporter, Mr. Baum, and Mr. Lee. It also asserted a claim of breach of fiduciary duty against Mr. Lee. The complaint stated that Mr. Middleton was domiciled in Miami, Florida; that Mr. Lee was a resident of Los Angeles County, California; that The Hollywood Reporter was a Delaware limited liability company with its principal place of business in Los Angeles County, California; and that Mr. Baum was a resident of Los Angeles County, California.

The defendants each sought dismissal of the complaint as barred by California's one-year statute of limitations. Specifically, they each argued that, under the most significant relationship test, the cause of action arose in California and, therefore, Florida's borrowing statute required the application of California's one-year statute of limitations. Mr. Middleton sought two extensions of time to respond to the motions to dismiss, but the district court did not rule on the motions. Nonetheless, Mr. Middleton failed to timely respond to the motions, and his counsel subsequently withdrew. Mr. Middleton then sought new counsel.

In April of 2023, Mr. Middleton, with new counsel, moved for leave to file an amended complaint asserting two defamation claims (one against Mr. Lee and one against The Hollywood Reporter and Mr. Baum). The proposed amended complaint sought

to narrow the disputed defamatory statements and claims brought against the defendants; more clearly establish Mr. Middleton's domicile in Florida prior to and at the time of the article's publication; and provide further detail as to the defamatory statements.

In his motion for leave to amend, Mr. Middleton also seemingly responded to the defendants' motions to dismiss. Mr. Middleton argued that the most significant relationship test—given his Florida domicile at the time of the article's publication and where the injury occurred—necessitated application of Florida's more favorable two-year statute of limitations. Mr. Middleton further asserted that the proposed amended complaint was not futile because it clarified that he was domiciled in Florida at the time of the article's publication.

The defendants opposed amendment of the complaint. They argued that the amended complaint would still be barred by California's one-year statute of limitations under the most significant relationship test.

Several months later, in June of 2023, the district court issued an order to show cause to Mr. Middleton for failing to respond to the defendants' motions to dismiss. The order required him to explain why the motions should not be granted by default and alternatively required Mr. Middleton to file responses to them. In response to the order, Mr. Middleton stated that amending his complaint would address the concerns in the motions to dismiss and narrow the scope of the issues and claims.

The district court granted the defendants' motions to dismiss and denied Mr. Middleton's motion for leave to file an amended complaint. Citing Rule 7.1 of the Local Rules of the Southern District of Florida, the court granted the motions to dismiss by default due to Mr. Middleton's failure to respond. Alternatively moving to the merits, the court then considered whether Florida's borrowing statute required application of California's statute of limitations to Mr. Middleton's defamation claims. Applying the most significant relationship test, the court concluded that "because the California [a]ction is pending in California, the defamatory statements were published in California, the relationship of the parties is centered in California, and all [d]efendants reside in California, the factors weigh[ ] in favor of California having the most significant relationship where the tort arose." As a result, the court ruled that Mr. Middleton's defamation claim was—as the defendants argued—time-barred by California's one-year statute of limitations.[2]

---

[2] The district court dismissed the entire complaint as time-barred by California's one-year statute of limitations for libel. But Mr. Middleton's claims for breach of fiduciary duty and intentional infliction of emotional distress in the initial complaint were not defamation-based claims and, therefore, are subject to different statute of limitations periods under California law. *See* Cal. Civ. Proc. Code § 335.1 (two-year statute of limitations for claims alleging intentional infliction of emotional distress); *id.* at § 343 (four-year statute of limitations for claims alleging breach of fiduciary duty). Any error in this regard is harmless because Mr. Middleton's proposed amended complaint dropped the claims for breach of fiduciary duty and intentional infliction of emotional distress.

The district court also concluded that the proposed complaint—specifically the new allegations clarifying Mr. Middleton's Florida domicile and specifying that at least part of the injury occurred in Florida—were futile because California's statute of limitations would still apply. Consequently, the court denied with prejudice the motion for leave to file an amended complaint and dismissed the action. This appeal followed.

**II**

We review *de novo* the dismissal of a complaint for failure to state a claim. *See Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 867 (11th Cir. 2023). In doing so, we accept the factual allegations in the proposed amended complaint as true and view them in the light most favorable to Mr. Middleton. *See Williamson v. Travelport, LP*, 953 F.3d 1278, 1288 (11th Cir. 2020). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A district court's choice of law determination is subject to *de novo* review. Any factual underpinnings of that determination, however, are reviewed for clear error. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1239 (11th Cir. 2007).

"We review a district court's denial of a motion to amend a complaint for an abuse of discretion." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003). But "we review such decisions *de novo* when 'the denial is based on a legal determination that amendment would be futile.'" *Taveras v.*

*Bank of Am., N.A.*, 89 F.4th 1279, 1285 (11th Cir. 2024) (quoting *Gonzalez v. City of Deerfield Beach*, 549 F.3d 1331, 1332–33 (11th Cir. 2008)).

### III

Mr. Middleton argues that the district court erred in dismissing his complaint by default for failure to respond to the defendants' motions to dismiss. He contends that he was not dilatory in failing to respond to the motions to dismiss and that the court failed to consider lesser sanctions. The defendants respond that it was within the court's discretion to dismiss this action by default.

We normally review a district court's dismissal of an action by default for an abuse of discretion. *See Kilgo v. Ricks*, 983 F.2d 189, 192 (11th Cir. 1993). We assume, without deciding, that the district court abused its discretion by granting the motions to dismiss by default. We therefore move on to address the merits issue Mr. Middleton raises on appeal—whether Florida's borrowing statute requires application of California's one-year statute of limitations.

### IV

In addressing whether California's or Florida's statute of limitations applies, we consider the allegations in Mr. Middleton's proposed amended complaint. *See Catastrophe Mgmt. Sols.*, 852 F.3d at 1021–22. As noted, Florida provides a two-year statute of limitations for claims of libel and slander while California provides a one-

23-12979              Opinion of the Court                    11

year statute of limitations.  *Compare* Fla. Stat. § 95.11(5)(h), *with* Cal. Civ. Proc. Code § 340(c).

Four dates are critical to determining whether the defamation claims are time-barred: (1) the date the article was published, June 25, 2020; (2) the date California's statute of limitations expired, June 25, 2021; (3) the date Florida's statute of limitations expired, June 25, 2022; and (4) the date Mr. Middleton filed this action, June 24, 2022.  Because Mr. Middleton instituted this action on June 24, 2022, he was within Florida's two-year statute of limitations period but well past California's one-year statute of limitations period.[3]

## A

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state."  *Grupo Televisa, S.A.*, 485 F.3d at 1240.  "Because [Mr. Middleton] filed this diversity action in the [Southern] District of Florida, we must look to Florida's conflict-of-laws rules to resolve the present dispute."  *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1567 (11th Cir. 1990).

## 1

Florida's borrowing statute provides that "[w]hen the cause of action arose in another state or territory of the United States . . . and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state."  Fla. Stat.

---

[3] We assume that the proposed amended complaint related back to the initial complaint for statute of limitations purposes.  *See generally* Fed. R. Civ. P. 15(c)(1)(B).

§ 95.10. As we have done before, we apply § 95.10 in this diversity case. *See Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co.*, 944 F.2d 809, 812 (11th Cir. 1991).

"The purpose of the [borrowing] statute is to discourage 'forum shopping' and the filing of lawsuits in Florida that have already been barred in the jurisdiction where the cause of action arose." *Celotex Corp. v. Meehan*, 523 So. 2d 141, 143 (Fla. 1988). Thus, "it becomes necessary to determine where the cause of action arose." *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1113 (Fla. 1987). The Florida Supreme Court borrowing statute applies where "there are significant relationships which establish that the cause of action arose in another state." *Celotex Corp.*, 523 So. 2d at 144.[4]

Florida courts apply the "most significant relationship" test set out in § 145 of the Restatement (Second) of Conflict of Laws to determine in which state a cause of action arose and what statute of limitations applies. *See Bates*, 509 So. 2d at 1114–15. Under § 145 the "contacts" to be considered when determining the most

---

[4] In some states with similar borrowing statutes, a defamation claim arises in the state where the defamatory statement is first published. *See, e.g., Couzens v. Donohue*, 854 F.3d 508, 515–17 (8th Cir. 2017) (applying Mo. Rev. Stat. § 516.190). Florida courts, however, use the most significant relationship test to determine where a cause of action arose for purposes of § 95.10. *See Bates*, 509 So. 2d at 1114–15. *See also State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006) ("[W]ith respect to torts and statutes of limitation, we have abandoned the rule that the applicable substantive law is the law of the state where the injury occurred—*i.e.*, lex loci delicti—in favor of a flexible test to determine which state has the most significant relationships to the cause of action.").

significant relationship include (1) "the place where the injury occurred;" (2) "the place where the conduct causing the injury occurred;" (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties;" and (4) "the place where the relationship, if any, between the parties is centered." *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (quoting Restatement (Second) of Conflict of Laws § 145(2) (Am. L. Inst. 1971)). "These contacts are to be evaluated according to their relative importance with respect to the particular issue," which requires a court to "examine the facts and circumstances presented in each particular case." *Judge*, 908 F.2d at 1568 (quoting Restatement (Second) of Conflict of Laws § 145 (Am. L. Inst. 1971)).[5]

**2**

The Restatement (Second) of Conflict of Laws provides certain specific presumptions in defamation cases that must be considered before applying the most significant relationship test. Under

---

[5] In addition, § 145 provides that these contacts "be taken into account in applying the principles of § 6" of the Restatement. Under § 6 seven factors are "relevant to the choice of the applicable rule of law": (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) the ease in the determination and application of the law to be applied. *See* Restatement (Second) of Conflict of Laws § 6. The parties have not briefed the factors outlined in § 6, nor did the district court consider them in its analysis. So we focus our analysis on the factors set out in § 145.

the Restatement, the general presumption in a defamation case is that "the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship . . . , in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws § 149 (Am. L. Inst. 1971). But in a multistate defamation action where the allegedly defamatory statements have been published in more than one state, the presumption is that "the state of most significant relationship will *usually* be the state where the person was domiciled at the time, if the matter complained of was published in that state." Id. at § 150 (emphasis added). This presumption does not apply when "one of the other states has a more significant relationship to the occurrence and the parties." Id. at § 150 cmt. e.

An alternate state may have the most significant relationship when the defamatory communication caused plaintiff the greatest injury to his reputation in that state. See id. ("[A]t least most issues involving the tort should be determined . . . by the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation."). One of the comments to § 150 provides several examples when this may be so: (a) when the plaintiff is better known in the alternate state; (b) when the defamatory matter relates to an activity of the plaintiff that is principally located in the alternate state; (c) when the plaintiff suffered greater damages in the alternate state; or (d) when the principal place of circulation of the defamatory matter was in the alternate state. See id. Courts

may also consider the state or states where the defendant uttered or made the defamatory act or communication, as well as where the defendant is domiciled, incorporated, or holds a principal place of business. *See id.*

Florida courts have not addressed § 150. And we have only considered § 150 in two unpublished opinions. In both cases—*Nix v. ESPN, Inc.*, 772 F. App'x 807 (11th Cir. 2019), and *Frey v. Minter*, 829 F. App'x 432 (11th Cir. 2020)—we applied the law of a state other than that of the plaintiff's residence.

In *Nix*, the plaintiffs brought a defamation action in Florida against three media companies which published and republished a news article about a lawsuit between one Florida plaintiff and Major League Baseball. *See* 772 F. App'x at 808. Faced with a conflict between two statutes of limitations—those of New York and Florida—the district court determined that New York law applied under the most significant relationship test. *See id.* at 810. As to the first and second factors under § 145, the court determined that where the injury occurred and where the tortious conduct took place weighed "somewhat" in favor of New York because (1) the plaintiffs alleged general injuries in New York and Florida, but specific injuries in New York, and (2) the decision to publish the allegedly defamatory information was made in New York. The court found that the third and fourth factors were neutral. *See id.* at 810–11. Finally, the court gave some weight to one of the factors in § 6—New York's interest in "determining the application of affirmative defenses." *Id.* at 811. We affirmed its choice-of-law

determination despite the presumption in § 150. *See id.* at 812 ("Considering the totality of these factors, it appears that the test weighs somewhat in favor of New York law.").

In *Frey*, a Florida plaintiff brought a defamation claim in Florida for statements accusing him of fraud, which were sent to the Georgia state bar and a local Georgia newspaper. *See* 829 F. App'x at 433. We considered whether the district court properly applied Georgia law to the plaintiff's defamation claim, and ultimately affirmed that determination notwithstanding § 150. *See id.* at 436. Although it was "not entirely clear" whether the injury occurred in Florida or Georgia, we assumed that the first factor under § 145 weighed in favor of applying Florida law. *See id.* at 435. We noted that the plaintiff's "injury occurred in part in Florida, where he reside[d], and the article was available in Florida via the internet." *Id.* The plaintiff, however, was licensed to practice law in Georgia, lived and maintained his practice in Florida, and represented both Georgia and Florida citizens. *See id.* Nevertheless, Georgia law applied. Although the parties' residences weighed neutrally "at best," we concluded that the conduct causing the injury occurred in Georgia and that the parties' relationship was centered in Georgia. *See id.* at 435–36. Specifically, the statements at issue "were about [the plaintiff's] conduct in Georgia state court proceedings" and "were made in Georgia by a Georgia resident." *Id.* at 435. Moreover "the local newspaper's principal circulation [was] in Georgia" and the parties' relationship centered around a litigation in Georgia. *See id.* at 435–36.

*Nix* and *Frey* are unpublished, but we find them persuasive because their analytical approach is sound.  Some of our sister circuits have similarly concluded that § 150's presumption must be considered alongside § 145's factors. *See Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004) (explaining that "the application of Missouri law would be improper only if other considerations listed in § 145 were sufficiently significant to overcome the presumption of § 150"); *Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016) ("Once this presumptive rule [§ 150] is established, [the court] must then consult the general tort principles outlined in [§] 145 . . . ."). And a leading treatise confirms that in cases where "the defamation is published nationally, . . . the choice-of-law presumption that the state of the plaintiff's domicile should apply is only that—a presumption, and courts will examine all factors that might impact on the various states that could be implicated by the defamation." 2 Rodney A. Smolla, Law of Defamation § 12:35 (2d ed. & Nov. 2024 update)

Although Mr. Middleton does not cite to § 150 in arguing that Florida has the most significant relationship to his defamation claims, our task is to determine and apply the law correctly.  And in that task we are not confined to the authorities cited by the parties: "[W]hen an issue or claim is properly before [us], [we are] not limited to the particular legal theories advanced by the parties, but rather retain[ ] the independent power to identify and apply the proper construction of governing law . . . ." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)).  *See also*

*United States v. Undetermined Quantities of All Articles of Finished & In-Process Foods*, 936 F.3d 1341, 1350 (11th Cir. 2019) ("The court's role is to get it right, not to choose which side's argument is better and adopt it lock, stock, and barrel."); *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) ("[T]his court is not restricted to analyzing the issues properly presented only on the authorities cited by the parties.").

**B**

Considering the allegations in the proposed amended complaint under the most significant relationship test and the factors set out in §§ 145 and 150 of the Restatement, we agree with the district court that the defamation claim arose in California for purposes of § 95.10, Florida's borrowing statute. As a result, California's one-year statute of limitations applies.

The first § 145 factor is where the injury occurred. Mr. Middleton argues that this factor weighs heavily in favor of Florida because he was domiciled in Florida when the article was published, the defendants directed their tortious acts to Florida, and he suffered reputational harm in the entertainment industry. He also contends that his proposed amended complaint clarified his presence in and connections to Florida, as well as the article's dissemination in Florida. The defendants respond that the first factor weighs in favor of California because, despite Mr. Middleton being domiciled in Florida, the defamatory statements in the article related to events that occurred in California.

Mr. Middleton alleged in his proposed amended complaint that he is domiciled Florida, and was domiciled there when the article was published. He also detailed how the article was published and accessible in print and online throughout Florida. He claimed that the article and the defendants' actions caused him "reputational harm" and "injury," as well as harm in Florida because of his "ongoing business activities there," specifically his minority ownership in the Philadelphia Phillies (which hold spring training in Clearwater, Florida).

In our view, where the injury occurred does not weigh in favor of either Florida or California. Although Mr. Middleton alleged that he suffered harm to his reputation and business activities in Florida through his residence and domicile in the state and his minority ownership in the Philadelphia Phillies, those allegations do not negate the existence of injury elsewhere. For example, one would think that Mr. Middleton also suffered harm to his reputation in Pennsylvania, where the Phillies are based; in California, where he worked for a time; and in Nevada, where his main production company was located when the article was published. Moreover, the matters that the article references—specifically the two allegedly defamatory statements that Mr. Middleton challenges in the proposed amended complaint—took place in California. Because the article was published in print and online, and accessible nationally, including Florida and California, the first factor is inconclusive.

## C

We next consider the second § 145 factor—where the conduct causing the injury occurred.  Mr. Middleton conceded in his brief and at oral argument that the conduct causing his injuries occurred in California.

Mr. Middleton argues, however, that this factor should not be weighed heavily in favor of California because Mr. Baum and Mr. Lee knew that he no longer resided or worked in California prior to and at the time the article was published.  The defendants say that knowledge of where Mr. Middleton was located does not address where the conduct causing injury occurred.  Rather, they maintain that the article makes no reference to Florida and instead focuses on activities in California and was authored and published in California.

The proposed amended complaint alleged that Mr. Lee, Mr. Baum, and The Hollywood Reporter all reside in or have a principal place of business in California.  It also alleged that, after Mr. Middleton filed the California action, Mr. Lee began providing allegedly false statements to Mr. Baum about Mr. Middleton.  Those conversations culminated in The Hollywood Reporter publishing the allegedly defamatory article.

As Mr. Middleton acknowledges, the second factor weighs in favor of applying California law.  *See* 2 Law of Defamation § 12:32 ("Because a state has an interest in regulating the conduct of its citizens, the state has an interest in having its defamation rules apply when an allegedly defamatory statement is uttered within

that state."). We recognize that in a multistate defamation case "[t]he place where the defendant's conduct occurred is of less significance in situations where . . . a potential defendant might choose to conduct his activities in a state whose tort rules are favorable to him." Restatement (Second) of Conflict of Laws § 145 cmt. e. But Mr. Middleton makes no allegation of geographic manipulation and nothing in the proposed amended complaint suggested such a motive. Finally, we find no support for Mr. Middleton's argument that Mr. Lee's and Mr. Baum's knowledge of his domicile weighs in favor of Florida. Such knowledge does not affect where the conduct causing the injury took place.

## D

The third § 145 factor is the domicile, residence, and citizenship of the parties. In his brief, Mr. Middleton attempts to dilute the parties' connection to California in favor of Florida. As to his own domicile, Mr. Middleton argues that he moved and relocated his business from California in 2016 and became a Florida domiciliary in 2018. He further notes that his main production company's principal place of business is Nevada. As to the defendants, Mr. Middleton says that although they are residents of California or have a business presence there, The Hollywood Reporter is incorporated in Delaware. The defendants lean on Mr. Middleton's concession that they are based in California and argue that his

remaining arguments are too attenuated to alter the determination in favor of California.

The factual allegations in the proposed amended complaint point slightly to California under the third factor. We take as true that Mr. Middleton has been domiciled in Florida since 2018. Nevertheless, the alternative considerations under § 150 weigh in favor of applying California law. Specifically, the defendants all reside in or maintain a principal place of business in California. Even though the proposed amended complaint provides clarity as to when Mr. Middleton became a Florida domiciliary, the third factor still weighs (though not heavily) in favor of California.[6]

### E

We conclude by considering the fourth § 145 factor—where the parties' relationship was centered. Mr. Middleton argues that this factor should weigh in favor of Florida because the parties' relationship goes beyond California, the article was published nationwide, and he suffered injury in Florida. The defendants counter that the parties' relationship was centered in California because many of the events occurred there.

The proposed amended complaint recounted the personal and professional relationship of Mr. Middleton and Mr. Lee, which spanned six years and ended when Mr. Lee allegedly breached

---

[6] Even if we were to find that the third § 145 factor was neutral, our ultimate decision would not change because no other factors under the most significant relationship test weigh in favor of Florida.

various promises and engaged in fraudulent acts against Mr. Middleton. It also provided a colorful and less than favorable account of Mr. Lee and his reputation. Mr. Middleton sued Mr. Lee because of the soured relationship, while Mr. Lee turned to Mr. Baum and The Hollywood Reporter to provide allegedly false allegations about Mr. Middleton for publication. The published article recounted the men's relationship, their fallout, and the subsequent legal action. As noted, the proposed amended complaint only challenged two of the defamatory statements—those related to Mr. Middleton's alleged communications with sex workers and alleged attempts to conceal his political donations.

The fourth factor weighs in favor of California because the parties' relationship was centered in California. One of the comments to § 145 provides that "[w]hen there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered." Restatement (Second) of Conflict of Laws § 145 cmt. e. As the district court put it, "[t]he [a]rticle at issue was written and published by a company with its primary place of business in California and concerns people who lived and worked in California who then filed a lawsuit in California. The alleged defamatory statements at issue are centered around the California [a]ction and the parties' relationship in California." D.E. 77 at 5.

Our conclusion as to the fourth factor is supported by *Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016), where we held

in a defamation action that the law of New York applied over Florida law.  Although the Florida plaintiff in that case "consented in his briefing and oral argument before the district court that New York law should apply to [that] case," *id.* at 695, we analyzed the issue independently.  We held that New York law applied over Florida law because "it [was] beyond real dispute that New York ha[d] the most significant relationship to the case," and explained that "[t]he article was published in New York, regarding an event that took place in New York, and that allegedly caused harm to [the plaintiff's] business interests in New York." *Id.* at 694.  *See also* 2 Law of Defamation § 12:30 ("[I]t is worth noting that the presumption that the plaintiff's domicile is the appropriate jurisdiction for choice-of-law purposes in governmental interest analysis cases is only a presumption, and a [c]omment to the *Restatement* contemplates that there may be instances in which some other state's law should apply to a particular issue[.]").

## V

The most significant relationship test set out in § 145 of the Restatement points to California as the state where this cause of action arose notwithstanding § 150's presumption.  Florida's borrowing statute therefore requires application of California's one-year statute of limitations to Mr. Middleton's defamation claims, rendering those claims untimely.

## VI

The district court's order of dismissal is affirmed.

**AFFIRMED.**